Nashua District Court
No. 82-293

THE STATE OF NEW HAMPSHIRE

v.

DAVID E. HARLOW, JR.

July 19, 1983

*Gregory H. Smith,* attorney general (*Jeffrey R. Cohen,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

KING, C.J. This is an interlocutory transfer without ruling from the Nashua District Court (*Harkaway,* J.). At issue is the scope of a search which may be conducted upon an "intoxicated" or "incapacitated" person who has been taken into police custody pursuant to RSA 172-B:3 (Supp. 1981).

The district court submitted a statement of facts concerning the events leading up to the search of the defendant. This statement indicates that on September 5, 1981, the Nashua police observed the defendant, David E. Harlow, Jr., walking unsteadily near the corner of Canal and Main Streets in Nashua. A police officer stopped the defendant and determined that the defendant was "intoxicated and incapacitated" within the meaning of RSA chapter 172-B (Supp. 1981). RSA 172-B:1, IX, X (Supp. 1981). The officer took the defendant into protective custody pursuant to RSA 172-B:3

(Supp. 1981), determined his identity, pat-searched him, handcuffed him and transported him to the Nashua Police Station. At the police station the defendant was again searched. All of his personal property was taken from him, including his wallet. While the defendant was being placed in his cell, the police searched the wallet. In it, they found four capsules, three of which were later determined to be LSD.

The defendant was charged with possession of three capsules of LSD. RSA 318-B:2, I (Supp. 1981). He filed a motion requesting the court either to suppress the evidence of the capsules or to dismiss the charges against him. He claimed that the Nashua police violated the provisions of RSA chapter 172-B (Supp. 1981) by placing the defendant in jail rather than taking him to an alcohol treatment program or to the emergency room of a hospital for treatment, and by failing to contact the appropriate medical personnel as required by RSA 172-B:3, III (Supp. 1981). He further contended that the search of his wallet violated the provisions of RSA chapter 172-B (Supp. 1981) and the New Hampshire and United States Constitutions. In response to this motion, the district court, pursuant to RSA 502-A:17-a (Supp. 1979); RSA 491:17, transferred two questions to this court:

> "1. Was the Nashua Police Department, and therefore all State of New Hampshire Police Departments, mandated by the statute to exhaust all other options under N.H. R.S.A. 172-B:3 dealing with an intoxicated person or an incapacitated person before lodging that person in Protective Custody in jail?
>
> 2. Did the search of this defendant taken into custody pursuant to N.H. R.S.A. Chapter 172-B violate that State law, the New Hampshire Constitution or the United States Constitution?"

After a review of the statute, we hold that while the Nashua Police Department was not required to "exhaust all other options" provided by RSA 172-B:3 (Supp. 1981) before placing the defendant, an "incapacitated" person, in jail, it nevertheless failed to comply with the requirements of RSA 172-B:3, II and III (Supp. 1981). We also hold that the search of the defendant's wallet violated RSA 172-B:3, VII (Supp. 1981), and that the evidence discovered as a result of the search must be suppressed.

The purpose of RSA chapter 172-B (Supp. 1981) is to provide for treatment of alcoholics and intoxicated persons rather than to subject them to criminal prosecution for their consumption of alco-

holic beverages. Laws 1979, 378:1. Generally, RSA chapter 172-B (Supp. 1981) provides that the police may take "intoxicated" or "incapacitated" persons into "protective custody" to assure the safety of the individual and the public and to assist the individual in returning to a functional condition. RSA 172-B:3, I, II (Supp. 1981); RSA 172-B:1, XIII (Supp. 1981). In addition to providing for protective custody, the legislature also provided that ordinances which punish an individual for being found in an intoxicated condition were ineffective. RSA 172-B:4, I (Supp. 1981).

The statute distinguishes between "intoxicated" and "incapacitated" individuals. It defines "intoxicated" as "a condition in which the mental or physical functioning of an individual is substantially impaired as a result of the presence of alcohol in his system." RSA 172-B:1, X (Supp. 1981). It defines "incapacitated," a more severe condition, as meaning that:

> "a person as a result of his use of alcohol is in a state of intoxication, or mental confusion resulting from withdrawal, such that:
>
> (a) He appears to need medical care or supervision by approved alcohol treatment personnel, as defined in this section, to assure his safety; or
>
> (b) He appears to present a direct active or passive threat to the safety of others."

RSA 172-B:1, IX (Supp. 1981).

RSA 172-B:3 (Supp. 1981) delineates different procedures for the treatment of "intoxicated" and "incapacitated" persons. RSA 172-B:3, I (Supp. 1981) provides that when a police officer encounters a person he believes is *intoxicated*, he may take him home, to an alcohol treatment program, or to another "appropriate" location, release him to some responsible person, or for his own protection lodge him in jail for up to twenty-four hours.

Somewhat in contrast, RSA 172-B:3, II (Supp. 1981) provides that when a police officer encounters a person he believes is *incapacitated*, he may take him to an alcohol treatment program or to the emergency room of a hospital, release him to an alcohol counselor, or for his own protection lodge him in jail for up to twenty-four hours. If an officer decides to lodge an *"incapacitated"* person in jail, however, RSA 172-B:3, III (Supp. 1981) specifies an additional requirement:

> "No person shall be lodged in a local or county jail under paragraph II unless the person in charge of the facility, immediately upon lodging said person in protec-

tive custody, contacts a designated alcohol counselor, a clinical staff person of an approved alcohol treatment program with detoxification capabilities or a professional medical staff person at a licensed general hospital emergency room to determine whether said person is indeed incapacitated. If, and only if none of the foregoing are available, such a medical or clinical determination shall be made by a registered nurse or registered emergency medical technician on the staff of the detention facility."

These provisions do *not* require the police to *exhaust* all other options before placing an "intoxicated" or "incapacitated" person in jail. The statute, in both instances, does require the officer to *consider* all of the options listed in the statute, and to decide which, in his judgment, is most appropriate to ensure the safety of the public, the individual, or both.

In this case, because the officer believed that in addition to being intoxicated, the defendant was also incapacitated, RSA 172-B:3, II (Supp. 1981) required the officer to consider the options described for an "incapacitated" person, and if he decided to lodge the defendant in jail, to contact the persons specified in RSA 172-B:3, III (Supp. 1981) immediately upon lodging the defendant in protective custody. The statement of facts submitted by the district court indicates that the police officer failed to consider the options listed in RSA 172-B:3, II (Supp. 1981), and that the police department failed to contact the appropriate persons specified in RSA 172-B:3, III (Supp. 1981). Whatever may be the consequences of failing to comply with these requirements, we do not believe that such failure requires the suppression of the evidence found in the defendant's wallet.

The defendant also claims that the search of his wallet violated RSA 172-B:3, VII (Supp. 1981), and the New Hampshire and United States Constitutions. We hold that the search of the defendant's wallet violated the provisions of RSA 172-B:3, VII (Supp. 1981).

RSA 172-B:3, VII (Supp. 1981) provides in pertinent part:

"A taking into protective custody under this section is not an arrest, however nothing in this section shall be construed so as to prevent an officer or jailer from obtaining proper identification from a person taken into protective custody or from conducting a search of such person to reduce the likelihood of injury to the officer or jailer, the person taken into protective custody, or others."

The State argues that the search of the defendant was an inventory search and that the statute does not prohibit inventory searches. We believe that the language of the statute, when considered in light of the statute's purpose, indicates that the legislature intended that protective custody not lead to all of the same consequences as a criminal arrest, and therefore intended to limit the scope of searches of persons held in protective custody pursuant to RSA chapter 172-B (Supp. 1981).

■ Thus RSA 172-B:1, XIII (Supp. 1981) defines protective custody as a "civil status," and RSA 172-B:3, VII (Supp. 1981) provides that a taking into protective custody "is not an arrest." We believe that to construe the language of RSA 172-B:3, VII (Supp. 1981) as limiting the scope of searches of individuals in protective custody to what is necessary to obtain identification and to protect the officer, jailer, or others, is consistent with the legislature's intent to treat such persons as sick and socially disabled persons, not as criminals. Laws 1979, 378:1.

■ In the instant case, the facts indicate that the police officer determined the defendant's identity at the scene, and therefore that the search of his wallet was not necessary for this purpose. In some cases of intoxication or incapacitation, this would have been necessary. Nor was the search of the wallet necessary to protect the police, the jailer, the defendant, or others. While it was necessary for the police to search the defendant to determine whether he possessed anything which might injure anyone, once they took the wallet from the defendant, it posed no danger of injury to either the defendant, who was in jail, or to others, since it could have been placed in an envelope and sealed. It was not necessary to search the wallet itself to determine what the wallet contained.

■ In holding that the search of the defendant's wallet violated RSA 172-B:3, VII (Supp. 1981), we do not hold that every search of a container would violate the statute. It may be necessary, in some cases, to determine whether a container holds some object which might injure someone, because a larger container could contain a gun or some other object which would remain dangerous even though the container was in police custody. We only hold that because the police had satisfied both purposes for a search allowed by the statute, the search violated the limitation of the statute.

While we upheld the inventory search of the unlocked portion of a briefcase in *State v. Levesque*, 123 N.H. 52, 455 A.2d 1045 (1983), in that case the person whose briefcase was searched had been arrested and there was no statute limiting the purposes for which an

inventory search could be performed. *See Illinois v. Lafayette*, 103 S. Ct. 2605 (1983) (inventory search of shoulder bag of arrestee not unreasonable). *Levesque* was decided on constitutional grounds, and permitted the search of a defendant's property for purposes other than identification and to prevent injury. *State v. Levesque*, 123 N.H. at 56, 57, 455 A.2d at 1048.

We need not determine whether the search violated the New Hampshire or United States Constitutions.

*Remanded.*

BOIS, J., dissented; the others concurred.

BOIS, J., dissenting: We have recently held that the "governmental interest in protecting the confinement area and the individual to be confined, and the integrity of the police in the administrative handling of the defendant's personal belongings while he is incarcerated, outweighed the individual's right to privacy in his possessions." *State v. Levesque*, 123 N.H. 52, 57, 455 A.2d 1045, 1048 (1983); *Illinois v. Lafayette*, 103 S. Ct. 2605 (1983); *see also South Dakota v. Opperman*, 428 U.S. 364 (1976)

This pronouncement not only reaffirmed but also strengthened this court's unanimous holding in *State v. Maxfield*, 121 N.H. 103, 427 A.2d 12 (1981).

Because the stated purpose of a routine administrative inventory search is the protection of the interests of an individual in custody, as well as those of the police and of society, I can see no difference between the search of a person in protective custody because he is "intoxicated and incapacitated" within the meaning of RSA ch. 172-B (Supp. 1981) and that of one who is in custody or under arrest because of the commission of a crime. And I must therefore respectfully dissent.