Rockingham
No. 85-365

# THE STATE OF NEW HAMPSHIRE

v.

## MICHAEL DONOVAN

November 7, 1986

*Stephen E. Merrill*, attorney general (*Kathleen A. McGuire*, attorney, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J.   The defendant appeals his conviction for possession of marijuana, subsequent offense, RSA 318-B:2, and presents the following issues for our review: (1) whether the Trial Court (*Thayer*, J.) erred in denying the defendant's motion to suppress evidence obtained in a search conducted after placing the defendant in protective custody under RSA 172-B:3 (Supp. 1985), where no arrest had been made; and (2) whether the trial court committed prejudicial error by instructing the jury that the State must prove that the defendant knowingly possessed the marijuana "either when he came into possession of it or at anytime thereafter," when the indictment charged possession only "at the Newmarket Police Department." Finding no error, we affirm.

On October 5, 1984, Officers Jordan and Pierce of the Newmarket Police Department were informed that an individual was "jumping in front of traffic on Exeter Street" in Newmarket. Upon arriving at the scene, the officers found the defendant stumbling or jumping in front of the northbound lane of traffic, which was rather heavy at the time. The officers observed that the defendant was unsteady afoot, incoherent, and smelling of alcohol.

Concluding that the defendant was intoxicated and unaware of what he was doing, the officers placed him in protective custody pursuant to RSA 172-B:3 (Supp. 1985). After some resistance, the officers managed to handcuff the defendant and drive him to the police station. At this time, the defendant told the police that his name was Michael Gorham or Gorman.

At the station, the police conducted a search of the defendant in accordance with RSA 172-B:3, VII (Supp. 1985). Paragraph VII of RSA 172-B:3 (Supp. 1985) provides, in pertinent part:

> "A taking into protective custody under this section is not an arrest, however nothing in this section shall be construed so as to prevent an officer . . . from obtaining proper identification from a person taken into protective custody or from conducting a search of such person to reduce the likelihood of injury to the officer . . . , the person taken into protective custody, or others."

After patting down the defendant, they removed a pack of cigarettes from his shirt pocket. The defendant continued to resist as the police emptied his pants pockets. In one of his pants pockets, the officers found a clear plastic bag containing marijuana. The defendant was then placed under arrest and taken to jail. While en route to the jail, he told the police that his real name was Michael Donovan.

In its indictment, the State charged the defendant with possession of marijuana on October 5, 1984, "at the Newmarket Police Department" (subsequent offense). The defendant filed a motion to suppress, asserting that the marijuana was inadmissible as the fruit of a search that exceeded the limitations of RSA 172-B:3, VII (Supp. 1985) and was obtained in violation of his rights guaranteed under the Federal and State Constitutions. This motion was denied. During deliberations following trial, the jury sent three questions to the court. The first one stated: "Part 2—Knowledge of possession—at time of possession or entire time of possession? Could you please clarify?" In response to this question, the court instructed the jury that "the State must prove and you the jury must find beyond a reasonable doubt that the defendant knowingly possessed the marijuana in question either when he came into possession of it or at anytime thereafter and once having that knowledge possession continued." After resuming its deliberations, the jury returned a verdict of guilty. This appeal followed.

This court has construed RSA chapter 172-B (Supp. 1985) as evincing a legislative intent to treat "intoxicated" or "incapacitated" persons not as criminals, but as socially disabled persons. *State v. Harlow*, 123 N.H. 547, 552, 465 A.2d 1210, 1213 (1983). The question we must now decide is whether a search such as that involved in this case is consistent with the dictates of RSA 172-B:3, VII (Supp. 1985). The defendant argues that in searching his pants pockets, *without reason to believe that they contained a weapon*, the police violated the intent of the statute by, in effect, treating him as a criminal. We disagree.

In *Harlow, supra* at 552, 465 A.2d at 1213, it was established that searches to obtain identification and to protect the officer, jailer or others, are permissible under RSA 172-B:3, VII (Supp. 1985). In *Harlow*, the police, after determining the defendant's identity, removed his wallet and searched it. While we held the search of the wallet to be a violation of the statute, we never questioned the propriety of removing the wallet from the defendant's pocket:

> "While *it was necessary for the police to search the defendant* to determine whether he possessed anything which

might injure anyone, once they took the wallet from the defendant, it posed no danger of injury . . . since it could have been placed in an envelope and sealed. *It was not necessary to search the wallet itself* to determine what the wallet contained."

*Id.* at 552, 465 A.2d at 1213 (emphasis added). Thus it is clear that the violation in *Harlow* resulted not from the removal of the wallet itself, but from the subsequent search of it. In the present case, the police acted legitimately in searching the defendant's pockets because they could have contained a small object or substance dangerous to the officers or to the defendant himself. Thus the removal of the plastic bag was consistent with the policies of the protective custody statute.

■■ Unlike *Harlow*, where the contents of the wallet were not visible from the outside, the contraband in this case was enclosed in a clear plastic bag. Once the bag had been removed from the defendant's pocket, the marijuana was in plain view, and its seizure was appropriate. *See State v. Slade,* 116 N.H. 436, 438, 362 A.2d 194, 196 (1976). We hold that the search of the defendant in this case was not a violation of RSA 172-B:3 (Supp. 1985), and therefore, the motion to suppress was properly denied. We do not consider the constitutional issues raised in the defendant's motion to suppress, as they have not been raised in this appeal.

We next consider whether the trial court committed prejudicial error in instructing the jury that the State need only prove that the defendant had knowing possession at the time he took possession of the marijuana or anytime thereafter, when the indictment charged him only with possession "at the Newmarket Police Department." The defendant argues that the instruction constructively and impermissibly amended the indictment.

■■ Indictments are brought on the oath of a grand jury, and thus, as a general rule, cannot be freely amended. R. McNamara, 1 New Hampshire Practice, Criminal Practice and Procedure § 474 (1980). The general rule as it has evolved in this State is that an indictment may be amended in form, but not in substance. *See State v. Spade,* 118 N.H. 186, 189, 385 A.2d 115, 116 (1978); *see also State v. Jenkins,* 64 N.H. 375, 376–77, 10 A. 699, 700 (1887); *State v. Blaisdell,* 49 N.H. 81, 83 (1869). This rule is reflected in RSA 601:8, which provides that "[n]o indictment . . . shall be . . . reversed for any error or mistake where the person or case may be rightly understood by the court, nor through any defect or want of form. . . ."

■■ While any allegation which constitutes an element of the offense must be considered part of the substance of the indictment, *State v. Bean*, 117 N.H. 185, 188, 371 A.2d 1152, 1153 (1977), it is well settled that amendments as to time are not substantive unless time is of the essence of the offense charged. *State v. Thresher*, 122 N.H. 63, 68–69, 442 A.2d 578, 580 (1982) (no error in allowing State to amend date in indictments for murder and robbery, since an exact date is not an element of either offense). As we noted in *Spade, supra* at 189, 385 A.2d at 116:

> "Courts have generally held that if time is not of the essence of an offense charged, an erroneous or defective allegation as to . . . time . . . is a matter of form which may be corrected . . . . Amendment is not allowed, however, when the circumstances of the case are such that a change must be regarded as a matter of substance, as effecting a change in the offense charged, or as adding an offense."

In the instant case, assuming *arguendo* that the instruction was a constructive amendment of the indictment, we believe it did no more than apply the rule of *Spade* and *Thresher*. This case can be distinguished from *United States v. Walker*, 575 F.2d 209 (9th Cir.), *cert. denied*, 439 U.S. 931 (1978), which was cited by the defendant at oral argument. *Walker* involved a prosecution for theft and transporting stolen property in interstate commerce. Count I of the indictment, alleging theft, charged that the offense was committed "within the special maritime and territorial jurisdiction of the United States." *Id.* at 213. The trial court, having defined the scope of maritime jurisdiction, issued an instruction to the jury, the most reasonable interpretation of which allowed conviction even if the intent to steal had not been formed within that jurisdiction. *Id.* at 213–14. Thus, the effect of the judge's charge was to amend the indictment and expand the scope of the offense with which the defendant had been charged. *Id.* at 214. In *Walker*, the jurisdictional requirement was part of the very substance of the statutory offense, which stated explicitly that the theft must be committed "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 661 (1982). In giving an instruction that would allow conviction notwithstanding lack of such jurisdiction, the court impermissibly transcended the statute and broadened the substantive offense. *Walker, supra* at 214.

■ In this case, the defendant was charged with possession of marijuana, subsequent offense. RSA 318-B:2 contains no language stating that the defendant must have knowledge of the possession of

a controlled drug at the time of his or her arrest. RSA 626:1, which requires that a person's act be voluntary before he may be found guilty of a criminal offense, states that "[p]ossession is a voluntary act if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." RSA 626:1, II. Thus, the precise time of defendant's knowledge of the possession of the controlled drug is not a necessary element of the offense. This is not a case where the jury instruction materially broadened the indictment by allowing the defendant to be convicted of an offense with which he was not charged. *See Stirone v. United States*, 361 U.S. 212, 217–18 (1960).

The defendant argues that the jury instruction on the issue of knowledge prejudiced his case because the "whole defense" that he had advanced at trial was that he was too intoxicated to have knowingly possessed the marijuana *at the police station*. Our reading of the trial transcript reveals this argument to be without merit.

The essence of the defendant's testimony at trial was that he did not remember coming into possession of the marijuana and that he was unaware that he had *ever* possessed it. The jury clearly rejected this contention. Moreover, defense counsel never contended in his closing statement that the jury had to find that the defendant knew precisely at the time of his arrest at the police station that he was in possession of marijuana. The crux of the defendant's defense was stated thus in closing argument: "Michael Donovan didn't have any dope when he started the day and he ended up with some dope in his pocket and he doesn't remember it being there. That is simply the case." Given the comprehensiveness of this defense, we cannot agree with the defendant's contention that he was prejudiced by the court's reinstruction that it was sufficient for the State to prove knowing possession "when [the defendant] came into possession of it or at anytime thereafter." The defendant clearly sought to defend upon the broader time period in the presentation of his case. "[T]he only surprise to the defendant was the trial court's application of the proper law. . . . Accordingly, if any prejudice arose . . . it was not undue prejudice." *State v. Bell*, 125 N.H. 425, 430, 480 A.2d 906, 910 (1984).

*Affirmed.*

THAYER, J., did not sit; the others concurred.