The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Donald Joseph DANDREA,
Defendant-Appellee.

No. 86SA98.

Supreme Court of Colorado,
En Banc.

May 26, 1987.

Barney Iuppa, Dist. Atty., Robert B. Harward, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Dennis W. Hartley, P.C., Dennis W. Hartley, Colorado Springs, for defendant-appellee.

KIRSHBAUM, Justice.

In this interlocutory appeal, the People, pursuant to C.A.R. 4.1, challenge an order of the El Paso County District Court suppressing certain evidence removed by law enforcement officers from the pocket of a coat worn by the defendant, Donald Joseph Dandrea, prior to transporting the defendant to an alcohol detoxification facility. The trial court concluded that the search was not authorized by the provisions of the Colorado Alcoholism and Intoxication Treatment Act, §§ 25–1–301 to –316, 11 C.R.S. (1982 & 1986 Supp.) (the Act), and violated the defendant's constitutional rights. The People contend that the search was proper. We affirm the trial court's order.

## I

At approximately 7:30 a.m. on November 1, 1985, Broadmoor Police Officer Marion Shipley pursued and stopped a pickup truck driven in an erratic manner by Remy Espinoza.[1] The defendant was the sole passenger in the truck. In response to a radio call by Officer Shipley for backup assistance, Officer John Woodward of the Colorado Springs Police Department arrived on the scene. Woodward removed Espinoza from the driver's seat of the pickup truck, arrested him for driving with a suspended driver's license, searched him, and placed him in a police patrol car. Officer Woodward and El Paso County Deputy Sheriff Victor Labrecque, who had also responded to Officer Shipley's request for assistance, then removed the defendant from the pickup.

A cliff descending over 100 feet bordered the roadside. As the defendant got out of the vehicle, he slipped and grabbed the door of the truck. The officers escorted him to the middle of the road. Concluding that he was intoxicated, they discussed what to do with him.

Because the day was extremely cold and the traffic stop had occurred on an isolated mountain road, the officers decided that the defendant's personal safety might be jeopardized if he were left at the scene.[2] They then decided to take the defendant into civil protective custody and transport him to an alcohol detoxification facility pursuant to provisions of the Act. Woodward and Labrecque, accompanied by Shipley, took the defendant to Shipley's police car. Pursuant to departmental policies,[3] Labr-

---

1. The defendant concedes that Officer Shipley had probable cause to arrest Espinoza.

2. The police officers testified that they believed the defendant was intoxicated, and such intoxication was demonstrated by the defendant's glassy eyes, his slowed body movements, and by the fact that the defendant stumbled as he exited the vehicle to speak with the officers. The defendant asserted that although he was "drunk" he was not intoxicated or incapacitated to the point of being a danger to the health or safety of himself or others and further asserted that fatigue might easily have been a major contributor to the symptomatology. The officers stated that they did not conduct their search of the defendant because of any perceived threat to themselves.

3. At the first suppression hearing, Officer Shipley testified that Broadmoor Police Department policy requires an officer to search for weapons before transporting a person in a police vehicle. Officer Woodward's testimony at that hearing also suggested that a person must be searched for weapons prior to being transported to a detoxification facility, but did not indicate the source of such requirement. Deputy Labrecque testified El Paso County Sheriff's Department policy dictates that any person who is to be transported in a patrol car must first be searched for weapons and handcuffed, but that

ecque conducted a pat-down search of the defendant for weapons before placing him in the vehicle. When the thickness of the defendant's jacket made it impossible to ascertain the nature of items in the pockets of the jacket, Labrecque began removing the contents of the pockets and placing them on the trunk of the car. Woodward observed the items, one of which was a small packet of heavy folded paper approximately the size of a razor blade. Concluding that the paper did contain a razor blade, Woodward opened it. He discovered a white, powdery substance, later identified as cocaine. The defendant was taken to the El Paso County Jail and later charged in a one-count information with possession of a schedule II controlled substance in violation of section 12–22–310, 5 C.R.S. (1985), and section 18–18–105, 8B C.R.S. (1986).

The defendant was bound over for trial after a preliminary hearing. He then filed a motion to suppress the cocaine, asserting that it had been obtained in violation of both article II, section 7, of the Colorado Constitution and the fourth amendment to the United States Constitution. At the first of two suppression hearings Officers Shipley and Woodward and Deputy Labrecque testified that the search of the defendant was initiated only as a result of the decision to take the defendant into civil protective custody and was limited to a desire to discover any weapons the defendant may have possessed. At the second hearing the acting coordinator of the Pikes Peak Mental Health Center alcohol receiving center testified that persons arriving at the center are initially given a breathalyzer test; that if the test indicates an alcohol level greater than 0.04,[4] the individual is admitted to the center and given pajamas to wear; and that the individual's clothing

and personal possessions are then thoroughly searched in the presence of the police officer, inventoried and secured in a locked container. The supervisor also testified that such search could include opening a paper packet such as the one found in the defendant's possession and turning over any discovered contraband to the police.

The trial court ruled that the police officers had probable cause to take the defendant into civil protective custody for transportation home or to a detoxification facility in accordance with section 25–1–310(1) of the Act; that the statute only empowers police officers to conduct a pat-down search of the person taken into civil protective custody; and that the search of the packet found in the defendant's possession violated constitutional provisions prohibiting unreasonable searches. The trial court further held that the packet should have been quarantined without any further search of its contents and returned to the defendant upon his release from the detoxification facility; that detoxification center personnel lacked authority to conduct any additional search of items such as the one here found in the defendant's possession; and that it would be improper to conclude that the evidence of contraband would have been inevitably discovered had the police officers not conducted an impermissible search prior to transporting the defendant.

## II

The People argue that the Act should be construed to authorize police officers to conduct as complete a search of the person and property of an individual taken into civil protective custody pursuant to section 25–1–310(1) as would be permitted if the individual were placed under arrest based on probable cause that the person had committed a criminal act.[5] We conclude that

---

a pat-down search might suffice at times. No actual police department manuals or directives were introduced into evidence.

**4.** This measurement presumably represents the number of grams of alcohol per two hundred ten liters of breath.

**5.** The People argue that the trial court erred in concluding that the detoxification center per-

sonnel lacked the authority to conduct a thorough search of the defendant's personal effects. The acting director of the alcohol receiving center serving the Colorado Springs area testified that a person delivered to the facility is asked to remain at the center and to consent to a search of his or her personal effects; that if the detainee agrees, a thorough search is made of the person's personal effects for contraband as well as for weapons; and that in practice center

the policy and provisions of the Act require rejection of this argument as a general proposition. We further conclude that in the particular circumstances of this case the trial court did not err in concluding that the decision to open the paper packet was unreasonable.

When statutory language is unambiguous, the intent of the General Assembly is to be gleaned from that language, taking into consideration the entire statute. *People v. District Court,* 713 P.2d 918 (Colo. 1986); *Heagney v. Schneider,* 677 P.2d 446 (Colo.App.1984). Section 25–1–310(1) states in pertinent part as follows:

> **Emergency commitment.** (1) When any person is intoxicated or incapacitated by alcohol and clearly dangerous to the health and safety of himself or others, such person shall be taken into protective custody by law enforcement authorities or an emergency service patrol, acting with probable cause, and placed in an approved treatment facility. If no such facilities are available, he may be detained in an emergency medical facility or jail, but only for so long as may be necessary to prevent injury to himself or others or to prevent a breach of the peace. A law enforcement officer or emergency service patrolman, in detaining the person, is taking him into protective custody. In so doing, the detaining officer may protect himself by reasonable methods but shall make every reasonable effort to protect the detainee's health and safety. A taking into protective custody under this section is not an arrest, and no entry or other record shall be made to indicate that the person has been arrested or charged with a crime. . . . Nothing in this subsection (1) shall preclude an intoxicated or incapacitated person who is not dangerous to the health and safety of himself or others from being assisted to his home or like location by the law enforcement officer or emergency service patrolman.

This language indisputably articulates a clear legislative determination that the act of taking a person into civil protective custody is not an arrest.[6]

■ The conclusion that police officials encountering intoxicated persons must make a distinction between criminal custodial arrests and civil protective detentions is reinforced by other provisions of the Act. Section 25–1–301 sets forth the purpose of the Act as follows:

personnel would open containers and folded pieces of paper, plastic or tinfoil large enough to contain a razor blade or a small quantity of powder but would not open tinfoil appearing to contain gum or examine the contents of cigarette packages. The administrator also stated that if a person agreed to remain at the center but objected to any search, center personnel would permit the police officer to conduct a thorough search of the detainee's personal effects. The administrator further testified, however, that a person who objected to remaining at the center would not be searched, but instead would be released to the custody of the officer who had delivered the person to the facility for transport to a jail or to the person's home. No evidence was introduced indicating whether in this case the defendant would have been taken to jail or driven home in the event the defendant refused to remain at the center.

Assuming, without deciding, that the theory of inevitable discovery advanced by the People is applicable to the question of the permissible extent of an initial field search of a person placed in civil protective custody because of intoxication, this evidence is insufficient to support said theory. We, therefore, need not determine the question of the permissible scope of searches of detainees conducted at detoxification centers. *See Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (the Court noting, in reviewing the propriety of a full inventory search of a criminal arrestee, that it was unclear whether the defendant was to have been incarcerated, making that an appropriate inquiry on remand); *Walden v. State,* 397 So. 2d 368 (Fla.Dist.Ct.App.1981) (police officer's patdown search of defendant was not authorized where defendant did not consent to being placed in detoxification center and was not incapacitated); *Bennett v. State,* 344 So.2d 315 (Fla.Dist.Ct.App.1977) (same result); *see generally* 2 W. LaFave, *Search & Seizure* § 5.5(c) (2d ed. 1987) (full inventory search of criminal arrestee is unlawful if detention is unjustified either because prior probable cause for arrest has dissipated or because arrestee was not afforded right to obtain stationhouse release).

6. The statute authorizes officers to assist to their homes persons intoxicated or incapacitated by alcohol but not clearly dangerous to the health and safety of themselves or others. The defendant has not challenged the authority of the officers to place him in civil protective custody, however.

(1) It is the policy of this state that alcoholics and intoxicated persons may not be subjected to criminal prosecution because of their consumption of alcoholic beverages but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society....

(2) With the passage of this part 3 at its first regular session in 1973, the forty-ninth general assembly has recognized the character and pervasiveness of alcohol abuse and alcoholism and that public intoxication and alcoholism are health problems which should be handled by public health rather than criminal procedures....

Section 25–1–316 states in part as follows:

**Criminal laws—limitations.** (1) No county, municipality, or other political subdivision may adopt or enforce a local law, ordinance, resolution, or rule having the force of law that includes drinking, being a common drunkard, or being found in an intoxicated condition as one of the elements of the offense giving rise to a criminal or civil penalty or sanction.

. . . .

(3) Nothing in this part 3 affects any law, ordinance, resolution, or rule against drunken driving, driving under the influence of alcohol, or other similar offense involving the operation of a vehicle, an aircraft, or a boat or machinery or other equipment or regarding the sale, purchase, dispensing, possessing, or use of alcoholic beverages at stated times and places or by a particular class of persons.

(4) The fact that a person is intoxicated or incapacitated by alcohol shall not prevent his being arrested or prosecuted for the commission of any criminal act or conduct not enumerated in subsection (1) of this section.

(5) Nothing in this part 3 shall be construed as a limitation upon the right of a police officer to make an otherwise legal arrest, notwithstanding the fact that the arrested person may be intoxicated or incapacitated by alcohol.

Considered together, these provisions indicate a clear legislative decision that persons taken into civil protective custody solely because of intoxication are to be treated quite differently from persons placed under custodial arrest because of suspected criminal conduct.[7]

This legislative policy is in harmony with the policy underlying the Uniform Alcoholism and Intoxication Treatment Act, 9 U.L.A. 57 (1979), which served as the model for the Act. As emphasized by a Commissioner's note to the Uniform Act, the protective custody authorized thereunder "is similar to the way in which the police provide emergency assistance to other ill people, such as those in accidents or those who have sudden heart attacks. It is a civil procedure...." 9 U.L.A. at 82. *See* ABA *Standards for Criminal Justice* § 1–2.2 (2d ed. 1986). The detention authorized by the Act is permitted only to prevent harm to the detainee or others resulting from the detainee's conduct or inability to act. *See Carberry v. Adams County Task Force On Alcoholism,* 672 P.2d 206 (Colo.1983). The Act, therefore, cannot be used directly or indirectly to justify the equivalent of a criminal custodial arrest not supported by probable cause. *See, e.g., Peter v. State,* 531 P.2d 1263 (Alaska 1975); *State v. Perry,* 298 Or. 21, 688 P.2d 827 (1984); *State v. Harlow,* 123 N.H. 547, 465 A.2d 1210 (1983).

█ The Act does not require the procurement of a warrant prior to placing a person in civil protective custody. Keeping this fact in mind, and also recognizing the legislative policy the Act is designed to accomplish, we must make every effort to construe the statute in a manner that does not violate constitutional limits. § 2–4–201, 1B C.R.S. (1980); *People v. Loomis,* 698 P.2d 1320 (Colo.1985); *Yarbro v. Hil-*

---

**7.** An arrest of a person upon probable cause of having committed a crime for the purpose of taking the person to police facilities for booking is considered a "custodial arrest." *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*ton Hotels Corp.*, 655 P.2d 822 (Colo.1982); *cf. Torres v. Puerto Rico*, 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979) (police officers' warrantless search of defendant's baggage, though authorized by statute, violates fourth amendment where probable cause and exigent circumstances absent). A warrantless search is presumptively invalid under the fourth amendment to the United States Constitution [8] and article II, section 7, of the Colorado Constitution,[9] subject only to a few narrow and specifically delineated exceptions. *Thompson v. Louisiana*, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984) (per curiam); *United States v. United States Dist. Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); *People v. Reynolds*, 672 P.2d 529 (Colo.1983); *People v. Harding*, 620 P.2d 245 (Colo.1980). The general requirement that a search proceed only upon prior approval by a judge or magistrate interposes a neutral and detached judicial officer between the police and the "persons, houses, papers, and effects" of the citizen, thus ensuring the protection of those areas of a person's life to which reasonable expectations of privacy attach. *Thompson v. Louisiana*, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246; *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The constitutional test of a warrantless search ultimately is reduced to the question of whether the search was reasonable under all relevant attendant circumstances. *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct.

1652, 80 L.Ed.2d 85 (1984); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *People v. Unruh*, 713 P.2d 370 (Colo.), *cert. denied,* ——— U.S. ———, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986); *People v. Savage*, 630 P.2d 1070 (Colo.1981). The prosecution bears the burden of establishing that some basis exists to justify departure from the fundamental principle of federal and Colorado constitutional law that a warrantless search is presumed to violate the reasonable expectation of freedom from intrusion into the privacy of one's person and personal effects enjoyed by all private parties. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *People v. Brewer*, 690 P.2d 860 (Colo.1984); *People v. Williams*, 200 Colo. 187, 613 P.2d 879 (1980).

Any determination of what constitutes reasonable warrantless police conduct in civil protective custody detentions authorized by the Act must take into account the absence of certain factors deemed most significant in determining the permissible scope of warrantless searches of suspected criminals. The primary justifications for permitting warrantless searches or seizures [10] incident to custodial arrests are preserving and avoiding destruction of evidence of the crime for which the defendant has been arrested and protecting the safety of arresting officers. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d

---

**8.** The fourth amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

**9.** Article II, section 7, of the Colorado Constitution provides:

> **Security of person and property—searches—seizures—warrants.** The people shall be secure in their persons, papers, homes and

effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

Colo. Const. art. II, § 7.

**10.** The United States Supreme Court has noted that justification for a particular seizure does not necessarily constitute justification for a search of the item seized. *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

685 (1969). Another exception to the warrant requirement is recognized for items discovered in plain view in the course of an otherwise permissible search; however, only where there is probable cause to believe those items are associated with criminal conduct is a further search of the items permissible. *Arizona v. Hicks,* —— U.S. ——, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). In these few and narrowly defined circumstances, the governmental interests are deemed sufficiently important to permit warrantless searches and seizures so long as the invasions of personal privacy rights are limited to the furtherance of those interests. *See generally* 2 W. LaFave, *Search & Seizure* § 5.2(d) (2d ed. 1987).

■ In civil protective custody cases such as this one, no governmental interest in locating or preserving evidence of a suspected crime is present.[11] However, the Act does contemplate the transportation of some persons to various locations. Therefore, one factor to be considered in balancing a detainee's privacy interest against legitimate governmental needs to interfere with that interest is the safety of the officer as well as the detainee during such transportation. *See, e.g., State v. Smith,* 112 Ariz. 531, 544 P.2d 213 (1975) (pat-down search of intoxicated individual not under arrest is reasonable to protect safety of police officer while transporting individual); *Commonwealth v. Rehmeyer,* 349 Pa.Super. 176, 502 A.2d 1332 (1985) (pat-down search of intoxicated individual not under arrest is reasonable to protect safety of police officer while transporting individual to his home). While the goal of assuring officer safety is admittedly important, the legislative emphasis on the noncriminal nature of the contact between government officials and private citizens in civil protective custody settings requires that in such settings the individual's privacy interest must be accorded maximum weight in determining the reasonableness of police conduct. *State v. Newman,* 292 Or. 216, 637 P.2d 143 (1981), *cert. denied, Oregon v. Newman,* 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982); *State v. Perry,* 298 Or. 21, 688 P.2d 827 (1984). These features of civil protective custody cases distinguish them from cases involving searches incident to custodial arrests.[12]

■ Because the degree of potential danger to an officer will differ in different factual contexts, a case-by-case analysis rather than adoption of any rigid formula is required to determine the permissible extent of particular searches in initial civil protective custody detentions. *State v. Harlow,* 123 N.H. 547, 465 A.2d 1210 (1983). However, it must be noted that even in cases involving searches incident to investigative stops, wherein the reasonable personal privacy interest of the suspect is less significant, an initial pat-down search for weapons is deemed sufficient to achieve the goal of protecting officer safety. *E.g. Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290; *United States v. Brignoni-*

**11.** The Act provides that in some circumstances an individual may be placed in police custody for suspected criminal conduct as well as for the beneficent purposes of the Act. § 25–1–316(4). In this case, the defendant was placed in custody only because of his intoxicated condition.

**12.** Distinguishable from cases involving searches of civil detainees are cases suggesting that extensive searches of personal effects may be constitutionally reasonable even in the absence of an interest in preserving evidence. *See New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *People v. Bischofberger,* 724 P.2d 660 (Colo.1986). A criminal arrestee's privacy interest is immediately reduced. In a civil protective custody case, the detainee's privacy interest remains significant. Similarly, when initial police interference with a private party's conduct is based on reasonable suspicion rather than on probable cause, the extent of the initial search is relatively limited, in part recognizing that such person retains some reasonable expectation of privacy. *E.g., Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Bischofberger,* 724 P.2d 660 (Colo.1986).

*Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It would appear, therefore, that in most cases involving detention of a private citizen for the sole purpose of placing that person in civil protective custody, a pat-down search for weapons at the scene would fully satisfy the need to assure officer safety and the safety of the individual while simultaneously according sufficient weight to the detainee's status as a noncriminal and attendant interest in personal privacy. Thus the discovery of an item believed to be or to contain a weapon would in most circumstances require nothing more than the isolation of that item at the scene of the detention. Once the detainee's access to the item is denied, any further search of the item would have to be justified on some other basis.[13]

Application of these principles to the facts of this case leads us to conclude that the trial court did not abuse its discretion in granting the defendant's motion to suppress. Deputy Labrecque's initial pat-down search of the defendant for weapons to make certain that the defendant would not harm himself or others while being transported from the scene was reasonable in view of the purposes of the Act and the attendant circumstances. Although no of-ficer was in fear of danger to himself when Deputy Labrecque could not identify the objects located in the defendant's clothing, his decision to remove the objects contained in the coat pockets may be deemed a permissible extension of the initial pat-down search, as the trial court concluded. *See State v. Donovan,* 128 N.H. 702, 519 A.2d 252 (1986) (removal of items from detainee's pockets is consistent with policies of statute dealing with civil protective custody of intoxicated individuals, because pockets may have contained a small, dangerous object). However, once the package was confiscated and identified as a probable weapon, the limited objectives of the warrantless search had been fully accomplished.[14] The People offered no justification for any additional intrusion into the defendant's privacy interest to support the warrantless search of the seized package. In these circumstances, the record fully supports the trial court's order suppressing the contents of the package.

For the foregoing reasons, the order of the trial court is affirmed.

VOLLACK, J., dissents and ROVIRA, J., joins in the dissent.

VOLLACK, Justice, dissenting:

I agree with the majority's holding that the deputy was justified in conducting a

---

**13.** A warrantless search, particularly one stemming from noncriminal conduct, *see Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), is strictly limited in scope by the circumstances justifying the search, *Thompson v. Louisiana,* 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984) (per curiam); *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *People v. Unruh,* 713 P.2d 370 (Colo.), *cert. denied,* —— U.S. ——, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986); *People v. Reynolds,* 672 P.2d 529 (Colo.1983); *People v. Clements,* 661 P.2d 267 (Colo.1983); *People v. Roark,* 643 P.2d 756 (Colo.1982); *see also United States v. Presler,* 610 F.2d 1206 (4th Cir.1979) (police entry into apartment to render aid was reasonable, but thorough search of apartment after individual was transported to hospital exceeded scope of exigency where individual was not suspected of criminal conduct); *Shepherd v. State,* 343 So.2d 1349 (Fla.Dist.Ct.App.) (warrantless police search of person's wallet after person was brought to hospital with bullet wounds was unreasonable), *cert. denied,* 352 So.2d 175 (Fla. 1977); *State v. Richards,* 296 A.2d 129 (Me.1972) (after person taken to hospital following automobile accident, police officer's warrantless search of packet found in person's jacket pocket was unreasonable); *cf. United States v. Nord,* 586 F.2d 1288 (8th Cir.1978) (items found in plain view by police officers summoned to apartment to assist intoxicated individual are admissible).

**14.** The People suggest that the existence of police department policies concerning searches of criminal arrestees prior to placing them in patrol cars is a factor to be considered in defining the extent of a reasonable search of a person at the time the person is initially placed in civil protective custody. *See Colorado v. Bertine,* —— U.S. ——, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Whatever weight might be accorded such policy, if uniformly applied, no such policy was established in this case. *See supra* note 3.

pat-down search that included removing all objects from the defendant's coat pockets. However, I disagree with the majority's further holding that the deputy violated the protective custody statute, or the defendant's constitutional rights, when he opened the package to identify the probable weapon. I respectfully dissent.

The majority correctly states that the purpose and rationale of the Colorado Alcoholism and Intoxication Treatment Act [hereinafter Alcoholism Act or Act] focus on concern for the safety and protection of the individual, rather than investigation of allegedly criminal conduct. However, I believe that this rationale does not justify a defendant's use of the Act as a shield to prevent prosecution when a legal search reveals contraband. The issue is one of first impression: what search and seizure standards apply to a protective custody detainee under the Alcoholism Act?

## I.

### CUSTODIAL SEARCH

Because the civil protective custody statute does not contain provisions specifying how, when, or to what extent searches may be conducted, I believe the appropriate analysis is whether the defendant's protection from unreasonable police intrusion under article II, section 7, of the Colorado Constitution and the fourth amendment of the federal constitution was violated here.

The defendant here had been taken into civil protective custody pursuant to the Alcoholism Act, and the Act expressly states that "[a] taking into protective custody under this section is not an arrest." § 25–1–310(1), 11 C.R.S. (1982). However, I believe the language of the statute also makes it clear that the decriminalization of intoxication in the Act has a different purpose: to encourage treatment, and to ensure that a party will not suffer the consequences of an arrest record or criminal record simply because he has been taken into temporary custody for intoxication. However, the Act also clearly states:

(4) The fact that a person is intoxicated or incapacitated by alcohol shall not prevent his being arrested or prosecuted for the commission of any criminal act or conduct not enumerated in subsection (1) of this section.

(5) Nothing in this part 3 shall be construed as a limitation upon the right of a police officer to make an otherwise legal arrest, notwithstanding the fact that the arrested person may be intoxicated or incapacitated by alcohol.

§ 25–1–316(4), (5), 11 C.R.S. (1982).

Accordingly, I believe that the majority goes too far in holding that the statutory language "not an arrest" was intended to not only protect the detainee from the stigma of a criminal arrest record, but also limits law enforcement from conducting a thorough search of the defendant. Even though civil protective custody under the Act is not an arrest for purposes of charging or reporting a criminal act, I believe that once an intoxicated individual has been taken into custody, the principles that apply to search and seizure incident to a custodial arrest should apply.

A custodial arrest is "a police officer's seizure of a person for the purpose of taking that person to the station house for booking procedures and the filing of criminal charges." *People v. Bischofberger*, 724 P.2d 660, 662 n. 4 (Colo.1986). To make a legal custodial arrest, the arresting officer must have probable cause to believe the person has committed a criminal offense. *Id.* In contrast, law enforcement officers can take temporary custody of a person under the Alcoholism Act and require that the detainee go to an approved treatment facility, or be detained in an emergency medical facility or jail. § 25–1–310(1), 11 C.R.S. (1982). The officer can take an individual into temporary custody under the Act if the officer has "probable cause" to believe the party is "intoxicated or incapacitated by alcohol and clearly dangerous to the health and safety of himself or others." *Id.* Other language in the statute calls for this limited interpretation of the "not an arrest" distinction. For example, section 25–1–310(6) states that when a person is involuntarily detained under the Act, he must be advised of his right to challenge

the detention, the right to counsel at every stage, and the right to court-appointed counsel.[1]

Based on this interpretation of the Alcoholism Act, I believe that searches conducted pursuant to protective custody detentions under section 25–1–310(1) should be analyzed by the same standards that apply to searches incident to a lawful arrest.

## II.

## SEARCH INCIDENT TO ARREST/DETENTION

Once the defendant here was taken into protective custody, I agree with the majority that the arresting officer was entitled to conduct a pat-down search for the discovery of weapons. A "pat down or frisk for weapons is the very type of limited, protective intrusion authorized during an investigatory stop when the officer has reason to suspect the person with whom he is dealing might be armed and dangerous." *People v. Savage*, 698 P.2d 1330, 1335 (Colo.1985). In contrast with the majority opinion, I also believe that the officer had authority to conduct a search incident to a lawful custodial arrest. The scope of such a search "is quite broad ... [and] need not be limited to a mere pat-down of the arrestee's outer clothing, but may extend to pockets and other containers, opened or closed, found on the person of the arrestee or within his immediate reach." *People v. Bischofberger*, 724 P.2d 660, 664 (Colo. 1986). A searching officer "may seize and examine weapons, contraband, or other articles which the officer reasonably believes to be related to criminal activity even though these articles do not directly relate to the offense for which the arrest itself was effected." *Id.* at 665. In *Bischofber-*

*ger*, law enforcement officers searched the defendant incident to a custodial arrest and, as part of the search, they opened a container found in the defendant's shirt pocket and found contraband. We reversed the trial court's suppression of this evidence by expressly holding that the seizure of the container's contents "complied with recognized Fourth Amendment standards relating to a search incident to an arrest." *Id. See also United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (custodial search of a suspect under arrest is a reasonable intrusion under the fourth amendment).

In the analogous situation of a search incident to a warrantless arrest, the test under our state constitution is whether the arresting officer had probable cause to arrest the defendant. *People v. Cunningham*, 194 Colo. 198, 570 P.2d 1086 (1977). In this particular area, we have adopted the language of the U.S. Supreme Court in *United States v. Robinson:* "[an] intrusion [based on probable cause] being lawful, a search incident to the arrest requires no additional justification." *People v. Traubert*, 199 Colo. 322, 326, 608 P.2d 342, 345 (Colo.1980), *on appeal after remand*, 625 P.2d 991 (Colo.1981).

Here, the statute requires that a detaining officer have probable cause to believe a person is intoxicated and a danger to himself or others before taking the individual into protective custody. While this is not the same probable cause requirement as required for a criminal arrest, I believe the correct analysis is to permit a full search, pursuant to taking an individual into temporary custody, for the safety of the detaining officer, the detainee, and the public. The necessary result is that the officer

---

1. This court has taken a similar approach in the area of juvenile law. One of the express purposes of the Children's Code, sections 19–1–101 to –11–110, 8B C.R.S. (1986), is to serve the best interests of the child and to "assist him in becoming a responsible and productive member of society." § 19–1–102(d), 8B C.R.S. (1986). Rather than filing criminal charges against a juvenile offender, the prosecution generally files a "petition in delinquency." § 19–3–101(1)(b). When an officer has reasonable grounds to believe that a child has committed "an act which

would be a felony, misdemeanor" or ordinance violation if committed by an adult, the officer takes the child "into temporary custody;" under section 19–2–101(1)(a), rather than arrest. Search of a juvenile, incident to his being taken into "temporary custody," is controlled by the same search and seizure principles that apply to adult arrests, *People v. B.M.C.*, 32 Colo.App. 79, 506 P.2d 409 (1973), with the exception of consent searches, which are specifically addressed elsewhere in the Children's Code. *People v. Reyes*, 174 Colo. 377, 483 P.2d 1342 (1971).

here had authority to conduct a thorough search of a detainee in protective custody. He had probable cause, as defined in the Alcoholism Act, to believe that the defendant was intoxicated and a danger to himself or others. Based on this statutory probable cause requirement, he detained the defendant in protective custody. He then conducted a pat-down search for weapons. When he emptied the pockets of the defendant's jacket, he discovered the folded paper packet. Suspecting that it might contain a razor blade, the officer opened the packet and found contraband.

### III.

### PAT–DOWN SEARCH

Even if the officer was only entitled to perform the pat-down search for weapons, I believe the officer's actions during the pat-down were justified, and reasonable under Colorado law. The test is:

> In determining the reasonableness of a search in the situation where the search is not full blown but is rather just a protective search for weapons, the inquiry is a dual one: (1) was the officer's action justified at its inception, and (2) was the search reasonably related in scope to the circumstances which justified the interference in the first place?

*People v. Burley,* 185 Colo. 224, 226, 523 P.2d 981, 982 (1974). In *People v. Casias,* we found no constitutional violation had occurred when a tin-foil package was seized from the defendant's pocket pursuant to what began as a pat-down search by the officer for the protection of the officer. 193 Colo. 66, 75, 77, 563 P.2d 926, 932, 934 (1977). Based on the facts, we held that the search of the package was not unreasonable. *Id.* at 78, 563 P.2d at 935. *See also People v. Burley,* 185 Colo. 224, 523 P.2d 981 (1974) (officer's use of flashlight to scan part of defendant's car in search for weapon held reasonable because "the scope of the search was reasonably related to the *officers' fear* that the defendant might have a *weapon concealed* beneath the car seat." *Id.* at 227, 523 P.2d at 982 (emphasis added)).

Because I believe that even in the context of a pat-down search for weapons, this search was not violative of the defendant's constitutional rights, I would also reverse based on this line of Colorado law.

### IV.

### INEVITABLE DISCOVERY

I agree with the People's assertion that the "inevitable discovery" rule applies, and calls for admission of the seized contraband. We have adopted the inevitable discovery rule, which states that:

> [T]he exclusionary rule does not compel the suppression of evidence that the prosecution can show *would have been inevitably discovered absent the police misconduct or mistake:* "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale has so little basis that the evidence should be received." *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).

*People v. Briggs,* 709 P.2d 911, 922 (Colo. 1985) (emphasis added). We have clarified the inevitable discovery rule by stating that "the central focus should be on what investigatory measures necessarily or inevitably would have been taken." *People v. Quintero,* 657 P.2d 948, 951 (Colo.1983) (evidence held not admissible under inevitable discovery rule because the record "lacks even a hint of an independent route" by which the evidence could have been constitutionally obtained. *Id.*) The court of appeals has attempted to limit application of the rule to derivative evidence, as distinguished from primary evidence, in *People v. Schoondermark,* 717 P.2d 504, 506 (Colo.App.1985), and we granted certiorari on this issue in *Schoondermark (cert. granted,* April 7, 1986). Based on current Colorado law, I believe the contraband here is admissible under the inevitable discovery rule.

The majority, in footnote 5, concludes that the record does not justify application of this rule. I disagree, based on the testimony of the detoxification center director

that when a detainee is admitted, the person's clothing and personal possessions are thoroughly searched for contraband as well as weapons, in the presence of the police officer. Containers and folded pieces of paper like the one found in the defendant's pocket here would have been opened at the detoxification center, and it necessarily follows that the contraband would then have been discovered. If the detainee objected to the search by personnel at the center, then the police officer would be called upon to perform a thorough search of the detainee.

Based on this testimony from the record, the fact that the officer found the contraband while searching the defendant at the scene of the stop rather than after transporting him to the center does not invalidate the search. Even if the search was unlawful, the contraband would have been discovered shortly thereafter during the inventory search at the facility, so the inevitable discovery rule applies.

Finally, I dissent for reasons stated by the United States Supreme Court in *Colorado v. Bertine:* "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Colorado v. Bertine,* —— U.S. ——, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987). I believe the distinction set forth by the majority is impractical. The majority concludes that the initial pat-down search was permissible and that removal of objects from the defendant's coat pockets was a permissible extension of the pat-down. However, the majority then creates a test that I feel is illogical; it seems to say that if a package is confiscated *and* appears to be a probable weapon, the officer must make a distinction and refrain at that point from further investigation. The required distinction, to identify confiscated packages as being probable weapons—or not probable weapons—is not a standard

that can be practically applied or effectively reviewed. " '[A] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " *New York v. Belton,* 453 U.S. 454, 458, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

V.

## UNIFORM ALCOHOLISM AND INTOXICATION TREATMENT ACT

I do not believe that the cases from other jurisdictions which have adopted the Uniform Alcoholism and Intoxication Treatment Act mandate the result reached by the majority. While twelve states have adopted similar or identical versions of the Act,[2] few have addressed this issue.

The New Hampshire Supreme Court upheld the admission into evidence of contraband seized during a protective custody search of an intoxicated party. The court held that "the police acted legitimately in searching the defendant's pockets because they could have contained a small object or substance dangerous to the officers or to the defendant himself. Thus the removal of the plastic bag was consistent with the policies of the protective custody statute." *State v. Donovan,* 128 N.H. 702, 705, 519 A.2d 252, 254 (1986). In so doing, the court distinguished its earlier holding in *State v. Harlow,* where it held that search of the detainee's wallet did violate the protective custody statute. The court had held in *Harlow* that "[i]t may be necessary, in some cases, to determine whether a container holds some object which might injure someone," 123 N.H. 547, 552, 465 A.2d 1210, 1213 (1983), and relied on this distinction as well as the fact that the marijuana in Donovan's pocket was stored in a transparent bag.

The majority cites *State v. Perry* in support of its statement that the Act alone does not provide justification for a criminal

**2.** The following states have adopted versions of the Act: Alaska, Delaware, Georgia, Illinois, Iowa, Kansas, Montana, Rhode Island, South Dakota, Washington and Wisconsin. Maine also adopted the Act, but repealed it in 1981.

custodial arrest, absent probable cause. In *State v. Perry*, the Oregon Supreme Court held that the Act alone does not support a search, but was careful to render a narrow decision, based on the specific facts detailed in the case. The court said: "[i]t is important to be precise about the exact situation that this case presents. It concerns the propriety of police opening *for inventory purposes* luggage belonging to a person who is being held solely for detoxification.... The state does not claim the police had probable cause or reasonable suspicion that defendant had committed a crime.... The police lacked probable cause or *reasonable suspicion* that the suitcases contained *evidence of a crime, contraband or weapons.*" 298 Or. 21, 24, 688 P.2d 827, 829 (1984) (emphasis added).

Another case cited by the majority is *Peter v. State*, 531 P.2d 1263 (Alaska 1975). That holding also turned on the particular facts, which involved information obtained by the police from an informant prior to the defendant being found in an allegedly intoxicated state and detained. The Alaska Supreme Court held that, under the Uniform Act, the officer "may have had a duty to take him into protective custody" and went on to hold that:

> [a]n officer transporting a person incapacitated by drink has a valid reason to make a limited search for possible weapons which might be used to injure him. Accordingly, any *items discovered* by [the officer] as a result of such a *search made prior to transporting* [the defendant] to jail were *not* the product of an *illegal* search.

*Id.* at 1272 (emphasis added). The court suppressed evidence seized during a more detailed search conducted when the defendant was jailed. *Id.* at 1272–73.

Based on the analysis above, I respectfully dissent from the majority's holding.

I am authorized to state that ROVIRA, J., joins in this dissent.