The PEOPLE of the State of Colorado, Petitioner,

v.

Leonel Alcides Gerardo CHAVES, Respondent.

No. 93SA113.

Supreme Court of Colorado, En Banc.

July 19, 1993.

Peter F. Michaelson, Dist. Atty., Fifth Judicial Dist., Timothy A. Meinert, Chief Deputy Dist. Atty., Eagle, for petitioner.

Fahrenholtz & Riva, P.C., James E. Fahrenholtz, Avon, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

The district attorney brings this interlocutory appeal, pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1992 Supp.), in order to challenge the district court's suppression of cocaine discovered inside a folded dollar bill pursuant to an inventory search conducted by the police after taking the intoxicated defendant, Leonel Alcides Gerardo Chaves, into protective custody. The trial court concluded that the search of the dollar bill was unreasonable under the circumstances and suppressed the cocaine. We affirm the order of the trial court.

I.

On November 28, 1992, Officer James Howrey of the Vail Police Department was dispatched to a local restaurant to investigate a report of an intoxicated person. There he found Chaves, who was alone and visibly intoxicated. The restaurant owner apparently had called a cab for Chaves, but it had not arrived. In Officer Howrey's opinion, Chaves was a danger to himself and others while in his intoxicated condition. As a result, Chaves was taken into protective custody pursuant to section 25–

1–310(1), 11A C.R.S. (1989).[1] No detoxification facilities were available at the time, and, therefore, Chaves was booked into the Vail Municipal holding facility.

In accordance with Vail Police Department policy,[2] an inventory search of Chaves' possessions was conducted. Officer Howrey discovered a pocket planner in Chaves' back pocket and proceeded to inventory its contents. He discovered a folded dollar bill which, based upon his training and experience, he suspected to be a "bindle"—a small package containing drugs. Officer Howrey opened the dollar bill and found a white powdery substance later identified as cocaine. Chaves was then arrested and charged with Possession of a Schedule II Controlled Substance.[3]

A motion to suppress was filed by defense counsel, and hearings on the motion were held. At the hearings, Officer Howrey testified that the purpose behind an inventory search is to discover and record hidden valuables in order to protect the department from liability. He also admitted that nothing prevented him from setting aside the dollar bill until a search warrant could be obtained. In addition, Officer Howrey stated that his purpose in opening the dollar bill was to look for drugs. Finding the officer's actions went beyond what was reasonable under an inventory search, the trial court granted the motion to suppress.

## II.

Chaves argues that *People v. Dandrea*, 736 P.2d 1211 (Colo.1987), is dispositive and requires that we affirm the district court. We agree.

**1.** The statute is set forth in the text of the opinion *infra* at p. 6. Chaves agrees that he was a danger to himself or others and was taken into protective custody pursuant to this statute.

**2.** The Vail Police Department Manual section 1901.06 provides as follows:

All persons who have been taken into custody and who will be held in the jail ... will be thoroughly searched. The personal property of each person searched will be removed, logged on the booking sheet, and kept in a

■ Like Chaves, the defendant in *Dandrea* was taken into civil protective custody by the police because he was intoxicated. Before they transported him to the detoxification center, the police officers did a pat-down search of Dandrea for weapons and discovered a small paper packet about the size of a razor blade. One of the officers opened the packet and found cocaine. *Id.* at 1212–13. We rejected the prosecution's contention that a person detained for protective custody could be searched as thoroughly as one who had been arrested. Our analysis was based on the clear legislative direction requiring police officers to treat civil protective detentions "quite differently" from criminal custodial arrests. *Id.* at 1215 (citing and discussing the Colorado Alcoholism and Intoxication Treatment Act. §§ 25–1–301 to –316, 11 C.R.S. (1982 and 1986 Supp.)).[4] We recognized that in a civil protective custody case, the detainee retains a significant privacy interest but that the privacy interest must be balanced against the legitimate governmental need to protect the safety of the police officer as well as the safety of the detainee. *Id.* We concluded that a pat-down search for weapons is appropriate when an individual is taken into civil protective custody:

It would appear, therefore, that in most cases involving detention of a private citizen for the sole purpose of placing that person in civil protective custody, a pat-down search for weapons at the scene would fully satisfy the need to assure officer safety and the safety of the individual while simultaneously according sufficient weight to the detainee's status as a noncriminal and attendant interest in personal privacy. *Thus the discovery of an item believed to be or to contain a weapon would in most*

secure place. Any contraband discovered in such a search will be booked as evidence.

**3.** § 18–18–405, 8B C.R.S. (1992 Supp.)

**4.** The Colorado Act is based on the Uniform Alcoholism and Intoxication Act. 9 U.L.A. 79 (1988). The Uniform Act was drafted in response to an emerging consensus that the criminal law was inappropriate for the prevention and control of alcoholism and public drunkenness. 9 U.L.A. at 79–80.

*circumstances require nothing more than the isolation of that item at the scene of the detention. Once the detainee's access to the item is denied, any further search of the item would have to be justified on some other basis.* *Id.* at 1218 (emphasis added) (footnote omitted). The *Dandrea* court upheld the patdown search of the defendant and the seizure of the small paper packet. We agreed that there was no justification of the police search of the packet, however, and affirmed the trial court's order suppressing the packet's contents. *Id.*

The district attorney attempts to distinguish *Dandrea* on two grounds. First, he asserts, the police had the authority to detain Chaves in jail since a detoxification facility was unavailable. Second, departmental policy permitted Officer Howrey to conduct a warrantless search of Chaves' dollar bill. From these asserted distinctions, the district attorney argues that the police reasonably conducted an inventory search of Chaves' possessions including a warrantless search of the folded dollar bill. In support of his argument, the district attorney relies on *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), and *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), cases which were discussed and found to be inapplicable in *Dandrea. Id.* at 1218, n. 14.

We reject the district attorney's contentions and find *Dandrea* to be controlling. Initially, we note that there has been no relevant change in the Colorado Alcoholism and Intoxication Treatment Act since *Dandrea* was decided. *See* §§ 25–1–301 to – 316, 11A C.R.S. (1989 and 1992 Supp.). In particular, section 25–1–310(1) remains the same and provides:

> When any person is intoxicated or incapacitated by alcohol and clearly dangerous to the health and safety of himself or others, such person shall be taken into protective custody by law enforcement authorities or an emergency service patrol, acting with probable cause, and placed in an approved treatment facility. If no such facilities are available, he may be detained in an emergency medical facility or jail, but only for so long as may be necessary to prevent injury to himself or others or to prevent a breach of the peace. A law enforcement officer or emergency service patrolman, in detaining the person, is taking him into protective custody. In so doing, the detaining officer may protect himself by reasonable methods but shall make every reasonable effort to protect the detainee's health and safety. A taking into protective custody under this section is not an arrest, and no entry or other record shall be made to indicate that the person has been arrested or charged with a crime. Law enforcement or emergency service personnel who act in compliance with this section are acting in the course of their official duties and are not criminally or civilly liable therefor. Nothing in this subsection (1) shall preclude an intoxicated or incapacitated person who is not dangerous to the health and safety of himself or others from being assisted to his home or like location by the law enforcement officer or emergency service patrolman.

The statute permits a police officer to take "reasonable methods" to protect him- or herself, but the officer must "make every reasonable effort to protect the detainee's health and safety." The section quoted above emphasizes that a protective custody detention is not an arrest and that no entry or record may be made indicating that the person in question was arrested. Detention in a jail is permitted only if no treatment facility is available and only for as long as may be necessary to prevent injury to the detainee or others.

Thus, in the clearest possible terms, the Act distinguishes a person in protective custody from a person who has been arrested for allegedly committing a crime. Chaves did not lose his status as a civil detainee simply because the detoxification facility was not open at the time when he was taken into protective custody. The stated departmental policy concerning inventory searches cannot override the statute and convert a civil detention into an arrest. Jail security would not be breached

by following *Dandrea* and setting aside the folded dollar bill while a search warrant is sought.[5]

The fact that Chaves was not an arrestee distinguishes *People v. Inman,* 765 P.2d 577 (Colo.1988), in which we applied the analyses of *Bertine* and *Lafayette* to an inventory jail search of an arrestee. In *Inman,* we upheld the admission into evidence of cocaine contained in a paper packet, that was found in a small cosmetic bag in the defendant's purse and opened pursuant to an inventory search. The defendant in *Inman* had been arrested, however, not taken into protective custody as was the case with Chaves.

 Because civil detainees cannot be treated as arrestees, there are two rules for inventory searches. When an inventory search is undertaken pursuant to an arrest, the police officer may completely search all of the arrestee's belongings, including closed containers like a suspected "bindle." *See Inman,* 765 P.2d 577. When such a search is conducted pursuant to protective custody, however, the scope of the officer's inventory search is limited by the privacy interest of the detainee, and any closed containers must be set aside and a warrant obtained before they may be opened. *Dandrea,* 736 P.2d at 1218. Recognition of these separate rules is compelled by the Colorado Alcoholism and Intoxication Treatment Act. The status of the person subjected to the search (*i.e.,* whether a person has been arrested or taken into protective custody) determines, within the parameters of reasonableness, how the inventory search may be conducted.

This requirement that the police abide by different rules in different contexts is not unusual. Police officers frequently are given statutory duties that are civil in nature. "The policeman, as a jack-of-all-emergencies, has 'complex and multiple tasks to perform in addition to identifying and apprehending persons committing seri-ous criminal offenses.'" 2 Wayne R. La-Fave, *Search and Seizure* § 5.4(c) p.525 (2d ed. 1987) (*quoting ABA Standards for Criminal Justice* § 1–1.1(b) (2d ed. 1980)). The purpose of the inventory search of a civil detainee is not to find drugs, but to ensure that all of the detainee's possessions are held safely for him or her. The search also permits the officers to remove and isolate all possessions which may be dangerous if the detainee were permitted to retain the items while in custody, but does not permit the officers to search closed containers without a warrant.

As we stated above, *Dandrea* is on point. In both situations, the officer involved was conducting a legitimate search of a defendant in protective custody—a pat-down in *Dandrea,* and an inventory search in this case. In neither case was there any reason to suspect the defendant of criminal activity, nor was there any threat to the officer's safety, particularly in the discovery of the folded dollar bill. Like the officer in *Dandrea,* the officer in this case opened the folded dollar bill, admittedly and specifically in search of drugs. That action far exceeded the purpose of the inventory search. As we stated in *Dandrea,* "no governmental interest in locating or preserving evidence of suspected crime [was] present." *Id.* at 1217. The dollar bill easily could have been set aside and, upon a showing of probable cause, a search warrant obtained and executed. In this case, therefore, we conclude that the warrantless search of the folded dollar bill was not reasonable.

The ruling of the trial court is affirmed.

VOLLACK, J., dissents, and ROVIRA, C.J., joins in the dissent.

Justice VOLLACK dissenting:

The majority concludes that the district court correctly suppressed evidence of cocaine discovered as a result of an investigatory search conducted after the defendant Leonel Alcides Gerardo Chaves (Chaves)

---

**5.** The trial court found that the departmental policy was ambiguous concerning the extent of any inventory search to be undertaken. Since a jail is an alternate place for short term deten-tion of a person taken into protective custody, any policy would have to take into consideration the special status of a civil detainee.

was taken into protective custody by an officer of the Vail Police Department. I disagree. I conversely conclude that the search of the dollar bill—conducted pursuant to Vail Police Department policies—was not unreasonable in the present case. I respectfully dissent.

## I.

In *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the United States Supreme Court reversed a decision of this court, holding that "an inventory search may be 'reasonable' under the Fourth Amendment." *Id.* at 371, 107 S.Ct. at 741. The United States Supreme Court found that "inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Id.* at 372, 107 S.Ct. at 741.

The *Bertine* Court relied on a previous opinion in *Illinois v. LaFayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), wherein the United States Supreme Court held that

[a] range of governmental interests supports an inventory process. It is not unheard of for persons employed in police activities to steal property taken from arrested persons; similarly, arrested persons have been known to make false claims regarding what was taken from their possession at the station house. A standardized procedure for making a list or inventory as soon as reasonable after reaching the station house not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person. Arrested persons have also been known to injure themselves—or others—with belts, knives, drugs, or other items on their person while being detained. Dangerous instrumentalities—such as razor blades, bombs, or weapons—can be concealed in innocent-looking articles taken from the arrestee's possession. The bare recital of these mundane realities justifies reasonable measures by police to limit these risks.... *It is immaterial*

*whether the police actually fear any particular · package or container; the need to protect against such risks arises independently of a particular officer's subjective concerns.*

*Lafayette*, 462 U.S. at 646, 103 S.Ct. at 2609 (emphasis added) The *Bertine* Court additionally relied on *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), wherein the United States Supreme Court held that "[t]he practice [of inventory searches] has been viewed as essential to respond to incidents of theft or vandalism." *Id.* at 369, 96 S.Ct. at 3097.

The *Bertine* Court premised its ruling that the inventory search of an impounded vehicle in that case did not contravene the Fourth Amendment in part on the fact that "there was no showing that the police, who were following standardized procedures, · acted in bad faith or for the sole purpose of investigation." *Bertine*, 479 U.S. at 372, 107 S.Ct. at 741. The *Bertine* Court additionally noted that, in both *LaFayette* and in *Opperman*, "the police were potentially responsible for the property taken into their custody." *Id.* 479 U.S. at 373, 107 S.Ct. at 742. The *Bertine* Court emphasized that inventory searches, in order to be reasonable, must comport with standardized criteria. *Id.* at 374 n. 6, 107 S.Ct. at 742 n. 6.

## II.

In the present case, Officer James Howrey testified that he was dispatched to Russell's Restaurant "on the report of an intoxicated individual." Officer Howrey observed Chaves stumbling and falling sideways, and noted that Chaves' eyes were extremely bloodshot and that his breath smelled strongly of an alcoholic beverage. Officer Howrey formed the opinion that Chaves was under the influence of alcohol. Officer Howrey inquired inside of Russell's Restaurant whether a cab had been called for Chaves, and found that, while a cab had been called, it had not yet arrived. Officer Howrey testified that

I placed [Chaves] in protective custody for a couple of reasons. Number one, he

was definitely a danger to himself; number two, he was definitely a danger to others; and number three, most of the time [Chaves] parks his truck in the village transportation center, which is just a few hundred yards away from where he was standing. It was my grave concern that if we would have left [Chaves] alone he would have fallen down and hurt himself or he could have possibly gotten in his vehicle and tried to drive home.

Officer Howrey conducted a search of Chaves outside of the restaurant in order to determine whether Chaves possessed any weapons. Officer Howrey was aware that, at 6:40 p.m., the local detoxification center was not yet open; accordingly, Officer Howrey placed Chaves in handcuffs and transported him to the police department. Officer Howrey testified as follows:

> My intent—what we always do is place him in the cell to sleep it off until we could find either somebody to pick him up or make the decision whether he would be transported to Avon detox or not.
>
> ....
>
> ... [W]hen we got right back to the police department I took all of his belong[ing]s out of his pockets and placed them on the desk in front of him. I asked [Chaves] to s[i]t in a chair, which he did, and I began to inventory his property.
>
> ....
>
> *Based upon the Vail Police Department's policies and procedures that we're required to conduct an inventory search of everybody being admitted into our jail.*

Officer Howrey commenced an inventory search and located a brown pocket planner that resembled a checkbook, and located inside of the pocket planner a dollar bill folded up which resembled a bindle. Officer Howrey unfolded the dollar bill and observed a white substance on it which subsequently tested positive for cocaine.

Based upon the precedent set forth in the United States Supreme Court decisions, I find that the inventory search yielding evidence of cocaine was reasonable. Officer Howrey was responsible for taking Chaves' property into police custody. As a result of Chaves' condition, Officer Howrey had no option other than to take Chaves to the police department since the local detoxification center was closed, and there were no other means to transport Chaves to his home. Pursuant to department policies and procedures, Officer Howrey was required to take and inventory Chaves' property when taking him into protective custody. Additionally, the record does not reveal that Officer Howrey conducted the inventory search in bad faith. Accordingly, I would reverse the order of the district court. I respectfully dissent.

I am authorized to say that Chief Justice ROVIRA joins in this dissent.