The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Michael CARPER, Defendant–Appellee.

No. 93SA326.

Supreme Court of Colorado,
En Banc.

June 27, 1994.

David J. Thomas, Dist. Atty., First Judicial Dist., Donna Skinner Reed, Chief Appellate Deputy Dist. Atty., Golden, for plaintiff-appellant.

David F. Vela, State Public Defender, Todd L. Nelson, Deputy State Public Defender, Golden, for defendant-appellee.

Justice KIRSHBAUM delivered the Opinion of the Court.

Pursuant to C.A.R. 4.1, the People have filed this interlocutory appeal of the trial court's order granting a motion filed by the defendant, Michael Carper, to suppress evidence of contraband seized by a police officer who was performing a civil inventory search of Carper's possessions in connection with Carper's detainment pursuant to the Colorado Alcoholism and Intoxication Treatment Act, §§ 25–1–301 to –316, 11A C.R.S. (1989 & 1991 Supp.) ("the Detoxification Act"). The trial court held that our opinion in *People v. Chaves*, 855 P.2d 852 (Colo.1993), required suppression of this evidence under the circumstances. We reverse.

I

On July 15, 1992, Lakewood Police Sergeant Donald G. Girson observed that Carper, who was at the time in a glass-enclosed bus stop, appeared to be having difficulty staying on his feet. Girson detected a strong odor of alcohol and observed that Carper had bloodshot eyes, acted in a disoriented fashion and was having difficulty speaking clearly. Concluding that Carper was intoxicated and posed a danger to the health and safety of himself and others, Sergeant Girson called his dispatcher and requested that someone transport Carper to the Jefferson County Detoxification Center ("the Center"). Lakewood Police Agent James I. Miller arrived, placed Carper in protective civil custody pursuant to the Detoxification Act and, pursuant to department policy, transported him in handcuffs to the Center.

At the Center, Miller, who was familiar with the Center's procedures, initiated a routine search of Carper's possessions so that the Center's employees could inventory them. As Miller began to empty the pockets of Carper's pants, Carper, who was still handcuffed, stated that there was cocaine in his shirt pocket. Miller then looked in the left pocket of Carper's shirt and removed a bindle—a piece of paper folded to create a type of container commonly used to carry cocaine. When Miller removed the bindle from Carper's pocket, Carper said, "Yes, that's it." Miller then opened the bindle and observed white powder therein. Miller arrested Carper and took him to the Lakewood Police Station, where the white powder was determined to be cocaine. Carper was booked and then returned to the Center.

Carper was subsequently charged with possession of a schedule II controlled substance, pursuant to sections 18–18–204(2)(a)(IV) and –405, 8B C.R.S. (1992 Supp.). He filed a motion to suppress all physical evidence seized at the Center, claiming, *inter alia*, that: (1) because he was intoxicated his statements were involuntary and he did not waive his expectation of privacy; (2) under all of the circumstances, his statements did not constitute voluntary consent; (3) because he was a civil detainee this court's decisions in *People v. Chaves*, 855 P.2d 852 (Colo.1993), and *People v. Dandrea*, 736 P.2d 1211 (Colo.1987), prohibited any inventory search of his possessions; and (4) even if he had been a criminal arrestee, the warrantless search of the bindle was impermissible absent exigent circumstances. Carper also moved to suppress the statements he made to Miller on the ground that they constituted fruit of the poisonous tree.

The trial court determined that the search of Carper's pockets was conducted according to the facility's normal procedures both for safety and for inventory purposes and that in view of the limited scope of searches of civil detainees permitted by the Detoxification Act, Miller's removal of the bindle from Carper's pocket was reasonable. The trial court then concluded that Miller's subsequent opening of the bindle without a search warrant was not reasonable and ordered suppression of the cocaine and of Carper's statements. The trial court rejected the People's

argument that Carper consented to the opening of the bindle.

## II

### A

■ The People contend that by his voluntary statements Carper abandoned any reasonable expectation of privacy he might otherwise have enjoyed in the contents of the bindle. The People rely on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and *Hoffman v. People*, 780 P.2d 471 (Colo.1989), in support of their argument. We agree with the People's argument.

■ Both the Fourth Amendment to the United States Constitution and article II, section 7, of the Colorado Constitution protect persons from unreasonable searches and seizures by police officers.[1] *Hoffman*, 780 P.2d at 473 (citing *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). Warrantless searches are presumed to be unreasonable unless they satisfy an exception to the warrant requirement. *People v. Thiret*, 685 P.2d 193, 200–01 (Colo.1984).

■ A threshold question in determining whether a person has been subjected to unreasonable governmental conduct is whether the person has a " 'constitutionally protected reasonable expectation of privacy' in the area or item searched or seized." *Hoffman*, 780 P.2d at 474 (quoting *Katz*, 389 U.S. at 360, 88 S.Ct. at 516 (Harlan, J., concurring)). *See also California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811–12, 90 L.Ed.2d 210 (1986); *Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214 (1984). In order to make such a determination, the court must assess, in light of the relevant circumstances of the particular case, whether: (1) the person exhibited a subjective expectation of privacy in the item seized or the place searched and if so, (2) whether society recognizes such an expectation as reasonable. *Hoffman*, 780 P.2d at 474 (citing *Katz*, 389 U.S. at 361, 88 S.Ct. at 516–17, (Harlan, J., concurring); *Oliver*, 466 U.S. at 177–78, 104 S.Ct. at 1740–41; *People v. Shorty*, 731 P.2d 679, 681 (Colo.1987); *People v. Oates*, 698 P.2d 811, 819 (Colo.1985); *People v. Savage*, 630 P.2d 1070, 1073 (Colo. 1981)). If the court finds that a defendant exhibited a reasonable expectation of privacy in a particular place or item, the Fourth Amendment generally requires police to obtain a warrant before conducting a search of the place or seizing the item. *See, e.g., United States v. Karo*, 468 U.S. 705, 717, 104 S.Ct. 3296, 3304, 82 L.Ed.2d 530 (1984); *Thiret*, 685 P.2d at 200–201. On the other hand, if a person does not manifest a subjective expectation of privacy with respect to the object of a search or seizure, or if any such subjective expectation of privacy is not reasonable, no warrant is necessary because no constitutionally protected interest is involved. *Oates*, 698 P.2d at 816 ("search" occurs for constitutional purposes only when such action violates reasonable expectations of privacy) (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). *See also Shorty*, 731 P.2d at 681–82 (search of area beneath doormat in front of defendant's apartment was constitutionally permissible despite a lack of probable cause or warrant because defendant had no legitimate expectation of privacy in that location).

In this case, Carper gave no indication that he had any expectation of privacy in his shirt

---

**1.** The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Article II, section 7, of the Colorado Constitution provides:

**Security of person and property—searches— seizures—warrants.** The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.

Colo. Const. art. II, § 7.

pocket or in the contents of the bindle found therein. To the contrary, the trial court determined that Carper voluntarily disclosed the fact that he had cocaine in his pocket to Miller and that after Miller removed the bindle, Carper indicated that it contained cocaine.[2] Under these circumstances, Carper did not manifest a subjective privacy interest in the contents of his pocket or of the bindle. Furthermore, had Carper in fact manifested a subjective expectation of privacy therein, it could not be deemed reasonable. Therefore, Miller's conduct did not constitute a search or seizure for purposes of Fourth Amendment analysis.

B

█ Carper contends that the seizure of the bindle and the subsequent search of its contents exceeded the scope of any warrantless search of a civil detainee authorized by the Detoxification Act. He asserts that a search of a civil detainee conducted pursuant to the Detoxification Act is limited to a search for weapons. We do not agree with this argument.

█ Searches of a civil detainee's pockets are permissible as part of an inventory search conducted in the course of the detention process provided for in the Detoxification Act for purposes of ensuring the security of the detainee's possessions and ensuring the safety of both the detainee and those with whom he or she has contact during custody. People v. Chaves, 855 P.2d 852, 855 (Colo.1993) ("[t]he purpose of the inventory search of a civil detainee is not to find drugs, but to ensure that all of the detainee's possessions are held safely for him or her."). The scope of civil inventory searches conducted pursuant to the Detoxification Act, while restricted, is not limited solely to a search for weapons. In this case the trial court found that Miller conducted a reasonable search of the pockets of Carper's garments to inventory Carper's personal items, pursuant to policies established by the center. The record supports those findings.

In Chaves, we concluded that searches of civil detainees conducted pursuant to the Detoxification Act were more limited in scope than searches conducted on persons arrested for suspected criminal conduct. We explained the distinction as follows:

> Because civil detainees cannot be treated as arrestees, there are two rules for inventory searches. When an inventory search is undertaken pursuant to an arrest, the police officer may completely search all of the arrestee's belongings, including closed containers like a suspected "bindle." See [People v.] Inman, 765 P.2d 577 [ (Colo.1988) ]. When such a search is conducted pursuant to protective custody, however, the scope of the officer's inventory search is limited by the privacy interest of the detainee, and any closed containers must be set aside and a warrant obtained before they may be opened. Dandrea, 736 P.2d at 1218. Recognition of these separate rules is compelled by the Colorado Alcoholism and Intoxication Treatment Act. The status of the person subjected to the search (i.e., whether a person has been arrested or taken into protective custody) determines, within the parameters of reasonableness, how the inventory search may be conducted.

Chaves, 855 P.2d at 855. In People v. Dandrea, 736 P.2d 1211, 1214–18 (Colo.1987), referred to in Chaves, we fully articulated the constitutional framework underlying the conclusions that inventory searches of civil detainees conducted pursuant to the Detoxification Act are of relatively limited scope.

Those cases do not require the conclusion that Miller's act in opening the bindle in the circumstances of this case exceeded the scope of his authority to search pursuant to the Detoxification Act. In Dandrea, a civil detainee subjected to a pat-down search prior to transportation to a detoxification facility did not voluntarily disclose prior to the search that one of his pockets contained cocaine. In Chaves, a search was conducted of a civil detainee after the detainee's arrival at the detoxification facility. The defendant there made no comment indicating that a

2. Because the record supports this determination, Carper's argument that his state of intoxication rendered his statements to Miller involuntary is without merit.

bindle of cocaine was located in one of his pockets. Here, however, Carper voluntarily announced that he had cocaine in his shirt pocket and that the bindle removed from his pocket contained cocaine. The fact that Carper's statements were uttered during Miller's inventory search of Carper's pockets does not support the conclusion that the search itself exceeded the limits of an inventory search of a civil detainee. Once Carper made his statements, the Fourth Amendment's protections against unreasonable searches no longer prohibited Miller from examining the contents of the bindle. Any distinctions between Carper's status as a civil detainee, a criminal suspect, or, for that matter, an ordinary citizen are thus irrelevant.

In view of our conclusion that Miller's opening of the bindle did not constitute a search or seizure for purposes of the Fourth Amendment, we need not address Carper's assertion that his statements did not constitute consent to any search or seizure. *See People v. Shorty*, 731 P.2d 679, 681 (Colo. 1987) (warrantless search which did not abridge legitimate expectation of privacy did not invoke constitutional protections). Similarly, because the search of Carper's pockets was reasonable, his statements during the search do not constitute fruit of the poisonous tree and are admissible in evidence.

### III

For the foregoing reasons, we reverse the trial court's ruling and remand the case to that court with directions to conduct further proceedings in light of this opinion.

ERICKSON, J., does not participate.