The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Steven A. HERRERA, Defendant–Appellant.

No. 98CA0566.

Colorado Court of Appeals, Div. V.

Sept. 2, 1999.

Rehearing Denied Oct. 28, 1999.

Certiorari Denied May 22, 2000.

236

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Daniel Dailey, Assistant Solicitor General, David B. Bush, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Lisa Dixon, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Steven Anthony Herrera, appeals the judgment of conviction entered upon a jury verdict finding him guilty of possession of a controlled substance, attempted tampering with physical evidence, and possession of less than one ounce of marijuana. We remand for further findings in accordance with this opinion.

At approximately 1:30 a.m. on March 28, 1996, two police officers noticed defendant walking in the vicinity of an abandoned vehicle, carrying a gas can. After approaching and questioning defendant, the officers concluded that he was intoxicated and concluded that they should take him into civil protective custody because he appeared to be a threat to the safety of himself or others. They questioned defendant in an attempt to locate someone to transport him home, but were unsuccessful in reaching anyone. The officers then decided to transport defendant to a detoxification center.

Before placing defendant into a police vehicle, the officers handcuffed him and conducted a search of his possessions. This search was initially limited to a pat-down for weapons, but soon evolved into a complete search of all items within defendant's immediate possession, including the contents of his pockets. The pat-down revealed a small pocket knife that the police confiscated.

The officers then removed all of the contents of defendant's pockets, and found a transparent plastic baggie that contained what appeared to be marijuana. Despite this discovery, the officers decided not to charge defendant with any crime for possessing this substance, and proceeded to dump out the contents of the bag onto the street.

As the contents fell to the street, the officers noticed a bindle, a piece of white paper folded into a square package. One of the officers opened the package and found two smaller bindles, one of which contained a white powder that resembled cocaine. The officers then collected the remains from the bag, arrested defendant, and transported him to jail.

While at the jail, defendant attempted to blow the cocaine off of a table where it was being weighed and tested. During this course of events, defendant made incriminating statements about the drug evidence.

## I.   Search and Seizure of Defendant

### A.   Initial Contact

Defendant asserts that the trial court erred by concluding that the initial contact was legal. He contends that the contact was unsupported by reasonable suspicion of criminal activity and was, therefore, invalid. Thus, defendant asserts, the court's refusal to suppress the evidence of drug possession and related statements as the fruit of the poisonous tree constituted reversible error. We agree that the contact was unsupported by reasonable suspicion, but conclude that this fact did not result in reversible error.

The Colorado Alcoholism and Intoxication Treatment Act (CAITA), § 25–1–301 to 25–1–316, C.R.S.1998, provides police officers with authority to detain a person who "is intoxicated or incapacitated by alcohol and clearly dangerous to the health and safety of himself or others . . . ." CAITA requires officers to act with probable cause when determining that protective custody is warranted. Section 25–1–310(1), C.R.S.1998.

The language of CAITA articulates a clear legislative determination that the act of taking a person into civil protective custody is not an arrest. Police encountering intoxicated persons must distinguish between criminal custodial arrests and civil protective detentions. *People v. Dandrea,* 736 P.2d 1211 (Colo.1987).

A consensual interview is not a seizure and, accordingly, does not implicate the protections of the Fourth Amendment. During a consensual interview, a police officer seeks the voluntary cooperation of an individual by asking non-coercive questions. A citizen is free to leave at any time during such an encounter or to ignore the police officer's questions. *People v. Paynter,* 955 P.2d 68 (Colo.1998).

A police-citizen encounter does not become a seizure simply because citizens may feel an inherent social pressure to cooperate with the police. A court must consider

the totality of the circumstances to determine whether the police exercised force or authority to effect a stop, or whether the police merely sought the voluntary cooperation of a citizen through a consensual encounter. *People v. Paynter, supra.*

■ A police officer may question a citizen concerning his or her identification and conduct without the encounter necessarily evolving into a seizure. *See People v. Paynter, supra* (officer asking for identification and questioning what defendant "was doing" did not constitute seizure).

■ Here, the prosecution concedes that, at the point of initial contact with defendant, the officers lacked reasonable suspicion of defendant's involvement in any criminal activity necessary for a valid investigatory stop. The prosecution argues, however, that no such reasonable suspicion was needed to approach defendant for purposes of determining whether there was a basis for placing him in protective civil custody. We agree.

CAITA clearly contemplates encounters between police officers and those whom they perceive are intoxicated, without any requirement that the officers also suspect involvement in criminal activity. Instead, officers must reasonably suspect that civil protective custody may be warranted. Once police officers make initial contact with such an individual, they must ascertain whether "probable cause" exists under CAITA to place the individual in civil protective custody for transport elsewhere.

For example, in *People v. Dandrea,* 736 P.2d 1211 (Colo.1987), the defendant was a passenger in a vehicle that police officers had pulled over because of the driver's erratic driving. After the officers had arrested the driver, they asked the passenger to step out of the vehicle. As he did so, the officers detected that he was intoxicated. At that point, no evidence existed that the passenger was involved in criminal activity, but the officers legitimately detained him long enough to determine whether protective custody was warranted.

Here, defendant disputes that the interview between the officers and himself was consensual. During the suppression hearing,

the officers testified that they approached defendant because he was carrying a gas can while walking toward the vehicle which was partially blocking a traffic lane. One officer stated that he suspected defendant might have been the owner of the vehicle. The officers also testified that, although they initially had detected an unwillingness on the part of defendant to acknowledge their attempt to contact him, defendant stopped voluntarily and cooperated with their effort to ask him questions to determine his level of sobriety.

No evidence before the trial court contradicted this version of events. Also, defendant offered no testimony to establish that he did not feel free to leave. We thus find no error in the trial court's ruling that the initial contact was proper.

## B. Scope of the Search

Defendant also asserts that the trial court erred by failing to suppress the drug evidence on grounds that police exceeded the constitutional boundaries of a search performed pursuant to taking defendant into civil protective custody. We agree. However, we conclude that remand for further findings is required because we are unable to ascertain from the record whether, under the doctrine of inevitable discovery and the single purpose container rule, the evidence could be found to be admissible despite the warrantless search.

■ Usually, a trial court has considerable discretion in ruling upon the admissibility of evidence, and a reviewing court will find an abuse of discretion only if the ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra,* 849 P.2d 33 (Colo.1993). However, we review questions of statutory interpretation *de novo. Robles v. People,* 811 P.2d 804 (Colo.1991).

CAITA makes it clear that persons taken into civil protective custody solely because of intoxication are to be treated quite differently from persons placed under custodial arrest because of suspected criminal conduct. *People v. Dandrea, supra.*

■ In civil protective custody cases, no government interest in locating or preserving evidence of a suspected crime is present. Thus, in most such cases, a pat-down search for weapons at the scene would suffice to assure officer safety. *People v. Dandrea, supra.*

■ In the context of an inventory search conducted during a civil detainee's admission to a proper facility, and according to the facility's normal procedures, a pocket search is permissible to ensure the security of the detainee's possessions and the safety of both the detainee and those with whom he or she has contact at the facility. *People v. Carper,* 876 P.2d 582 (Colo.1994).

■ However, the purpose of the inventory search is not to find drugs, but to ensure that all the detainee's possessions are held safely for him or her. The search also permits the officers to remove and isolate all possessions that could be dangerous if the detainee were permitted to retain them while in custody, but in such a search, the officers cannot search closed containers without a warrant. *People v. Chaves,* 855 P.2d 852 (Colo.1993).

■ Here, the trial court concluded that, under authority of CAITA, the officers had a right to conduct an inventory search of defendant when they decided to take him into civil protective custody. Defendant argues that the search exceeded the officer's authority under CAITA, and that this search was not a true "inventory search" because no inventory of defendant's possessions was ever undertaken. Nevertheless, we will refer to it as an inventory search merely for convenience. We agree with defendant that neither the supreme court cases, nor CAITA, authorizes a search of the type at issue here at the point of detention before transport to a detoxification facility.

The trial court found that the officers had conducted a pat-down search of defendant which produced a pocket knife. As part of the subsequent inventory search, the officers discovered the bag containing marijuana and the bindles. No evidence exists to suggest that the officers ever suspected that the baggie contained a possible weapon. *Cf. People*

*v. Dandrea, supra* (pocket search at scene of initial detention permissible where it was a legitimate extension of the pat-down). Thus, the officers exceeded their authority under CAITA by conducting an inventory search at the point of detention.

### C. Alternate Theories of Admissibility

■ Nevertheless, the prosecution argues that, even if the police erred in conducting an inventory search at the point of detention, the drug evidence was admissible under the alternate theories of inevitable discovery and the single purpose container rule. The "single purpose container rule" permits warrantless searches of certain containers, including bindles, which by their very nature cannot support an expectation of privacy because their contents may be inferred from their outward appearance. *People v. Martin,* 806 P.2d 393 (Colo.App.1990), *vacated on other grounds,* 806 P.2d 387 (Colo.1991).

Since the trial court concluded that the inventory search was valid under CAITA, it made no findings with regard to whether the requirements of these theories of admissibility were met. Upon consideration of these alternative theories, we conclude that remand to the trial court is required to make appropriate factual findings after an evidentiary hearing.

■ Regarding the theory of inevitable discovery, *see People v. Burola,* 848 P.2d 958 (Colo.1993), the hearing should explore whether defendant would inevitably have been admitted to the detoxification facility while the drugs were still in his possession, and whether an inventory search would have been conducted pursuant to the policy of the facility. *See* §§ 25–1–310(3) & 25–1–310(4), C.R.S.1998 (under provisions of CAITA, a facility administrator or an authorized designee has authority to accept or reject admission of civil detainees brought in by police officers).

■ Regarding the single purpose container rule, *see People v. Mascarenas,* 972 P.2d 717 (Colo.App.1998), the hearing should explore whether the bindles were the type of container commonly used to transport drugs,

and whether the officers had knowledge of this unique characteristic.

## II. Other Allegations of Error

### A. Chain of Custody

We reject defendant's remaining allegations of error. First, we conclude the trial court did not abuse its discretion by admitting the drug evidence because the prosecution failed to establish a sufficient chain of custody to lay a foundation for its admission.

■ The chain of custody rule requires that the proponent of real evidence establish that the evidence was involved in the incident and that the condition of the evidence at trial is substantially unchanged. *People v. Mascarenas*, 666 P.2d 101 (Colo.1983).

Here, in responding to defendant's challenge to the chain of custody, the trial court found that, despite some minor discrepancies in testimony, the chain of custody was sufficiently established and that any contradictory testimony would simply impact the weight of the evidence. Our review of the record leads us to reach the same conclusion.

### B. Possible Inattentive Juror

We also reject defendant's contention that he is entitled to a new trial because one of the jurors was sleeping through testimony.

■ Jury misconduct that materially affects the substantial rights of a party, preventing a fair and impartial trial, may serve as grounds for a new trial. However, to be entitled to a new trial, a defendant must establish that he or she was prejudiced by the misconduct, and the prejudicial impact of the misconduct is a question of fact to be determined in light of all the circumstances of the trial. The determination whether prejudice has occurred is within the sound discretion of the trial court and only where that discretion has been abused will a new trial be ordered. *People v. Evans*, 710 P.2d 1167 (Colo.App.1985).

■ Here, conflicting evidence exists regarding whether one or more jurors were inattentive or sleeping. Counsel for defendant complained to the court that he had seen one juror sleeping. However, neither the prosecution nor the court witnessed any sleeping jurors. Counsel for defendant did not move for mistrial, but asked the court to admonish the jury to pay attention. The court did so.

Under these circumstances, we cannot conclude that the trial court abused its discretion by failing to declare a mistrial *sua sponte*.

### C. Prosecutorial Misconduct

Finally, we reject defendant's contention that the prosecution attempted to shift the burden of proof to defendant by arguing against defendant's theory of the case. Also, we perceive no plain error arising from the prosecution's statement in closing argument that defendant was not telling the truth.

■ When no contemporaneous objection is made to the asserted error or defect, appellate review is limited to determining whether the error or defect rises to the level of plain error. *Wilson v. People*, 743 P.2d 415 (Colo.1987); Crim. P. 52(b).

■ Plain error has occurred when, after review of the entire record, we can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Moore v. People*, 925 P.2d 264 (Colo.1996).

■ Here, with regard to the alleged burden shifting, our review of the record leads us to conclude that the prosecution did not suggest that defendant was required to produce evidence to support his theory of the case. The prosecution argued that no evidence existed to support the defendant's theory, but this does not necessarily suggest that it would be improper for the jury to find the defendant not guilty in the absence of such evidence. Therefore, there was no plain error in this regard.

■ Since the truthfulness of testimony and the credibility of witnesses are matters to be determined by the trier of fact, and not by the advocates, it is improper for counsel to express his or her personal belief in the

truth or falsity of testimony during final argument. *Wilson v. People, supra.*

■ However, plain error is not present if the prosecutor's improper remarks were "few in number, momentary in length, and were a very small part of a rather prosaic summation." *See People v. Mason,* 643 P.2d 745, 753 (Colo.1982). Such is the case here.

■ The prosecutor stated, at the end of his closing argument that defendant was lying. This comment was improper. Nevertheless, it was brief and defense counsel did not voice a contemporaneous objection.

The cause is remanded to the trial court for a hearing and factual findings relevant to the suppression of the physical evidence. If the trial court finds that discovery of the baggie was inevitable, then the conviction for possession of marijuana shall stand affirmed. If the trial court also finds that the bindle was a single purpose container, then the conviction shall stand affirmed on all counts. If the court finds that the discovery of the baggie was not inevitable, then the conviction shall stand reversed on all counts, and defendant shall be granted a new trial.

Judge ROY and Judge PIERCE * concur.