21CA2012 Peo v DiMarco 11-27-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 21CA2012
Boulder County District Court No. 18CR1836
Honorable Normal A. Sierra, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Curtis James DiMarco,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Grove and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

---

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellant

Mallika L. Magner, Alternate Defense Counsel, Crested Butte, Colorado, for Defendant-Appellant

¶ 1     Defendant, Curtis James DiMarco, appeals the judgment of conviction entered on a jury verdict finding him guilty of numerous sex offenses.  He challenges his convictions on five grounds, asserting that the trial court erroneously (1) refused to sever the codefendants' cases; (2) constructively amended the charges in a jury instruction and on the verdict form after deliberations commenced; (3) failed to require the prosecution to elect a single transaction or to give the jury a modified unanimity instruction; (4) admitted irrelevant and prejudicial evidence related to victim C.D.; and (5) failed to replace an inattentive juror with the alternate. DiMarco also claims that cumulative error deprived him of a fair trial.

¶ 2     Because we agree that the trial court abused its discretion by not replacing an inattentive juror with the alternate, we reverse the judgment and remand for a new trial.  However, because the remaining issues are unlikely to arise in the same context on retrial, we do not further address them.

## I. Background

¶ 3    DiMarco and his wife, Sherry, have six children: C.D., A.D., L.D., Ln.D., D.D., and Ly.D.  In August 2017, DiMarco was arrested for explosive-related charges.  Consequently, all six children were placed in foster care.

¶ 4    While in foster care, the children engaged in concerning behaviors.  For example, Ln.D. and D.D. masturbated in public.  Eventually, several of the children accused DiMarco and Sherry of sexual abuse.

¶ 5    A.D. said that DiMarco showered with him and his brothers and washed his genitals and buttocks.  He also said that DiMarco touched A.D.'s penis in the kids' bedroom.  A.D. also described DiMarco placing a vibrator in his buttocks.

¶ 6    L.D. testified that DiMarco placed things in his buttocks and that DiMarco touched L.D.'s penis in the kids' bedroom.

¶ 7    The prosecution charged DiMarco with sexual assault on a child (A.D.) by one in a position of trust, pattern of abuse; solicitation to commit aggravated incest (A.D. touching Sherry); solicitation to commit incest (A.D. touching L.D., Ln.D., and D.D.);

2

sexual assault on a child (L.D.) by one in a position of trust, pattern of abuse; solicitation to commit aggravated incest (L.D. touching Sherry); solicitation to commit incest (L.D. touching Li.D., A.D., and D.D.); attempt to commit aggravated incest (Ln.D.); sexual assault on a child (Ln.D.) by one in a position of trust, pattern of abuse; and solicitation to commit incest (Ln.D. touching A.D. and L.D.).

¶ 8 The prosecution charged codefendant Sherry with sexual assault on a child by one in a position of trust, pattern of abuse and conspiracy to commit sexual assault on a child by one in a position of trust. The codefendants were tried jointly. The jury convicted Sherry of conspiracy and acquitted her of the remaining charges.

¶ 9 Concerning DiMarco, the jury hung on the solicitation to commit aggravated incest (A.D. touching Sherry) charge and acquitted him of the solicitation to commit aggravated incest (Lu.D. touching Sherry) charge. It found him guilty of the remaining offenses. The court sentenced DiMarco to a controlling term of sixty years to life in the custody of the Department of Corrections.

## II. Juror Misconduct

¶ 10    DiMarco contends that the trial court abused its discretion in denying his request to replace an inattentive juror with an alternate juror because the juror admittedly missed key testimony that prejudiced him.  We agree.

### A. Additional Facts

¶ 11    On the morning of the third day of trial, L.D. and D.D.'s adoptive mother (outcry witness), a family support worker who supervised visits between the children and DiMarco and Sherry, and a lead intake caseworker at the Boulder County Department of Housing and Human Services testified.

¶ 12    During a break in the testimony, the trial court informed the parties that Juror V told the bailiff he had witnessed a potentially fatal accident on his way home the previous night that he found quite disturbing, and that he was having trouble focusing on the testimony.  The court said it planned to question Juror V outside the presence of the other jurors.

¶ 13    The court began by confirming what Juror V had reported.  It then told the juror there would be one more witness before the lunch break and asked whether the break would allow him to clear

his head and focus. Juror V responded, "I'm willing to try that, but this shook me in ways that took me by surprise." The court said it appreciated Juror V's willingness to try and asked Juror V to let his clerk know of "any continued difficulty [and] how you experience the course of the afternoon."

¶ 14 DiMarco's counsel then asked, "Were you able to pay attention and listen to the previous witnesses' testimony?" Juror V responded, "Not totally 100 percent. Like I mentioned[,] yesterday I was focused on this, and today, I found myself – well, the picture of that poor man lying on the road and appeared to me he was dead. That's what keeps coming back."

¶ 15 The court followed up by asking, "When you say not totally 100 percent, I know that you were physically in the courtroom, and undoubtedly, it appears that that image kept occurring to you. Did you find that you were in part able to pay attention to the testimony, but not fully?" Juror V said, "In part." The court responded, "Okay. And it's impossible to quantify the depth of your attention. Yesterday, you said that were like fully attentive." Juror

V said, "Yep." The court then asked Juror V to check back in later in the afternoon, and Juror V agreed to do so.

¶ 16 At the lunch break, defense counsel asked to make a record outside the jury's presence. He argued that Juror V was unable to listen to the morning testimony up to the morning break, which occurred later than normal due to the length of the testimony. He said the juror had been impaired long enough with some of the most important witnesses in the trial and asked that the juror be excused and replaced with an alternate. The prosecutor said he would wait until the court inquired of Juror V in the afternoon.

¶ 17 The court said it would not excuse Juror V at that point and noted that

> [Juror V] was particularly conscientious in bringing this information to the court's attention. We certainly don't know to what extent all other jurors were paying as close attention as [Juror V] indicated that he was yesterday afternoon when he indicated that he was full on paying attention to all of the testimony. This morning, he indicated that he was in part distracted by the memory of his observations yesterday evening.

> I would hope that he is able to regain the focus that he believes he had yesterday afternoon, and we will be checking in with him anew.

¶ 18    That afternoon C.D., A.D., and Lu.D. testified.  The court questioned Juror V again.  Juror V stated, "This afternoon was much better.  I can't say that it's all gone, but most of it's gone."  When asked if he was able to focus on the testimony, Juror V responded that he was able to focus "most of the time" but not one hundred percent.  When asked how the afternoon compared to the morning, Juror V said, "Oh, totally different.  Yeah.  This morning was, oh, I missed quite a bit this morning."

¶ 19    The prosecutor took no position and said he would defer to the court.  DiMarco's counsel asked the court to excuse Juror V.  DiMarco argued that Juror V indicated that he was significantly impaired during the morning session.  DiMarco stated,

> I think he indicated that he was not able to focus quite normally this afternoon, which – but nonetheless was significantly better than this morning, which begs the question of just how bad the morning was.  And I think what that means is that the morning was very significantly impaired.
>
> I would note that through the day of impaired focus, we have had three alleged victims testify, as well as the two foster parents, who are really the initial outcry witnesses.  And so I would describe today as the most important day from an evidentiary perspective of any of

7

the days that I see us having this trial.  And to have a juror who is impaired for that period of time, I think really is – violates Mr. DiMarco's due process rights, and rights to have a jury truly listen to the testimony.

¶ 20    The trial court denied the request, saying

To the extent that he missed some of the testimony, you are correct.

The Court is not excusing [Juror V] at this point in time.  The Court left open the possibility that he touches back with the Court in the ensuing days.  As the Court indicated, the Court tracks jurors to ensure that none are asleep or seem to be distracted by anything that is within their vicinity.  And the Court regards as particularly conscientious on the part of [Juror V] the fact that he felt compelled to inform the Court about his experience and the fact that he regarded himself not fully able to focus on the presentation of evidence this morning.

There may be other jurors who at times perhaps find themselves also distracted by other goings on in their lives who perhaps don't communicate as fully with the Court.

The Court did indicate to jurors that when they are deliberating, they have their memory and the memory of their fellow jurors collectively, and any notes they've made and the notes of their fellow jurors also in the collective sense.  And there is absolutely a reliance if they find something that is missing from their own memory or notes for them to rely upon that of other jurors.

8

> Should it become an issue, we can always rely upon an alternate, but this early in a ten-day trial, the Court is reluctant to lose a juror. And so the Court will keep all jurors at present.

¶ 21    Juror V remained on the deliberating jury.

### B.    Standard of Review and Controlling Law

¶ 22    We review a trial court's ruling on juror misconduct due to allegations of an inattentive juror for abuse of discretion. *People v. King*, 121 P.3d 234, 241 (Colo. App. 2005). Generally, juror inattentiveness does not warrant a new trial absent a showing of prejudice, i.e., that the defendant did not receive a fair trial. *See People v. Herrera*, 1 P.3d 234, 240 (Colo. App. 1999). "The determination whether prejudice has occurred is within the sound discretion of the trial court . . . ." *People v. Evans*, 710 P.2d 1167, 1168 (Colo. App. 1985). Jury misconduct which materially affects the substantial rights of a party preventing a fair and impartial trial may serve as grounds for a new trial. *Id.*

¶ 23    A trial court "shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties." § 16-10-105, C.R.S. 2024.

9

## C.    Analysis

¶ 24    We begin by acknowledging that the standard of review is deferential and that the facts here present a close question. Nevertheless, we conclude that the trial court abused its discretion in refusing to replace Juror V with an alternate juror because the undisputed record shows that Juror V missed a significant portion of the trial testimony.

¶ 25    DiMarco argues that the facts in this case are like those in Evans.  In *Evans*, a juror fell asleep during defense counsel's closing argument.  710 P.2d at 1167-68.  Defense counsel was unaware of the situation until the trial court commenced contempt proceedings against the juror after the jury returned its verdicts. *Id.* at 1168.  The trial court found that the juror was asleep and had a "great deal of difficulty concentrating on what was going on." *Id.* However, the trial court denied the defendant's motion for judgment of acquittal or request for a new trial. *Id.* A division of this court found reversible error.  The division concluded that closing argument is "one of the most consequential parts of the trial" and that the juror's inattentiveness was not only "contemptuous of the

10

court, but contemptuous of the rights of the defendant." *Id.* Therefore, the division held that the defendant was prejudiced by the juror's misconduct and was entitled to a new trial. *Id.*

¶ 26    Additionally, and conversely, in *People v. Tunis*, the trial court observed that one of the jurors was having trouble staying awake. 2013 COA 161, ¶ 32.  The trial court found that the juror's head fell down and that the juror did not appear to be awake. *Id.*  The juror stated that he was having trouble staying awake and admitted to sleeping. *Id.*  Consequently, the trial court released the juror and replaced him with an alternate. *Id.*  The defendant moved for a mistrial asserting he was denied a jury of his choice. *Id.*  The trial court denied the motion. *Id.*  A division of this court held that a defendant does not have a right to a jury of choice and that the trial court's decision to replace the sleeping juror with the alternate was not an abuse of discretion. *Id.* at ¶¶ 31, 33.  Notably, no one questioned the fact that the juror was sleeping and that he had missed part of the trial testimony.

¶ 27    In contrast, in *People v. King*, defense counsel notified the trial court that a juror appeared to be dozing off "on a regular basis."

11

121 P.3d at 241. Counsel raised the issue three times with the trial court. *Id.* Counsel eventually requested that the juror be replaced with the alternate juror. *Id.* The trial court rejected counsel's request, stating that there was insufficient evidence that the juror was asleep or that he had missed substantial portions of the evidence to warrant removing him from the jury. *Id.* at 242. A division of this court found no abuse of discretion and held that the trial court's observations supported its conclusion not to remove the juror. *Id.*

¶ 28    We agree with DiMarco that the facts here are similar to those in *Evans* and *Tunis*, where the records undisputedly showed that the juror missed important parts of the trial. Like the jurors in *Evans* and *Tunis*, no one disputes that Juror V was distracted and inattentive. Indeed, when questioned by the court and defense counsel, Juror V admitted that he was having difficulty focusing and that, as a result, he had missed "quite a bit" of the morning's testimony. Therefore, we find this case distinguishable from those relied on by the People, where the juror's inattentiveness was disputed. *See People v. Hayes*, 923 P.2d 221, 229 (Colo. App. 1995)

12

(finding no prejudice where the record did not reflect that the juror actually fell asleep, but showed she was once admonished by the judge for having trouble keeping her eyes open); *Herrera*, 1 P.3d at 240 (no abuse of discretion where court instructed jury to pay attention and neither the prosecutor nor the trial court witnessed any sleeping jurors); *Durham v. State*, 867 A.2d 176, 181 (Del. 2005) (no prejudice occurs absent a showing of juror inattention).

¶ 29     Moreover, because under section 16-10-105, a trial court *shall* dismiss a juror "who, prior to the time the jury retires to consider its verdict, become[s] unable or disqualified to perform their duties," and because the record establishes that Juror V was unable to perform his duties during the morning's testimony, we conclude the trial court should have replaced him with an alternate juror. *People v. Durapau*, 280 P.3d 42, 46 (Colo. App. 2011) ("Unless the context indicates otherwise, the word 'shall' generally indicates that the General Assembly intended the provision to be mandatory.") (citation omitted).

¶ 30     We further conclude that DiMarco was prejudiced. The record shows that Juror V missed the testimony of the outcry witnesses,

13

significant witnesses in a sexual assault on a child trial. Moreover, he missed portions of the testimony of three child victims. The trial court acknowledged as much when it said, "To the extent he missed some of the testimony, you are correct." The trial court knew that Juror V was inattentive and missed a significant part of the testimony but did not replace him. While the court questioned Juror V, we are not convinced that questioning alone remedied the prejudice. The court never disagreed with counsel's assertions that the testimony was significant, nor did it make any findings that contradicted Juror V's assertions. Indeed, the court made no findings that the missed testimony constituted an insignificant portion of the ten-day trial, or otherwise was not important. Moreover, the court's reasoning that it did not want to lose a juror so early into a ten-day trial is contrary to the mandatory language in section 16-10-105 and failed to address the significance of the evidence Juror V had already missed.

¶ 31  We do not mean to suggest that a court faced with this dilemma is always required to dismiss a juror who, due to a lapse in concentration, misses some testimony. The impact on a juror's

14

ability to engage in informed deliberations would depend, among other things, on the degree and length of the juror's inattention, the complexity of the case, and the importance of the testimony at issue. For example, a juror who loses partial focus while a witness authenticates documents under CRE 901(b)(1) would likely present a different scenario from a juror who tunes out completely while a key eyewitness or victim testifies. The court retains discretion to assess the impact of a juror's momentary — or extended — inattention on the juror's ability to fairly assess the evidence. Here, however, we see no indication in the record that the court considered the potential impact of Juror V's situation on his ability to fully and fairly assess the evidence. And given the importance of the testimony that Juror V admitted he missed, we cannot conclude as a matter of law that Juror V's extended lapse in concentration did not prejudice DiMarco.

¶ 32    Accordingly, we conclude that DiMarco has demonstrated that he was prejudiced by the juror's misconduct and that he is entitled to a new trial.

15

## III. Disposition

¶ 33    The judgment is reversed, and the case is remanded for a new trial.

JUDGE GROVE and JUDGE LUM concur.